**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ANDREW R. PERRONG
1657 THE FAIRWAY #131
JENKINTOWN, PA 19046

       Plaintiff

v.

MATTHEW BRADFORD
1406 REINER RD.
NORRISTOWN, PA 19403

       Defendant.

Case No. 2:23-cv-00510-JDW

JURY TRIAL DEMANDED

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... 2

INTRODUCTION ............................................................................................................. 2

FACTUAL BACKGROUND............................................................................................. 3

LEGAL STANDARD........................................................................................................ 4

LAW AND ARGUMENT ................................................................................................. 4

    A.    The conduct here is not entitled to any form of immunity............................................... 4

        1.    Federally proscribed telemarketing calls hawking a "town hall" event to sell ObamaCare are not subject to absolute sovereign or legislative/diplomatic immunity under the Speech or Debate Clause............................................................................................. 5

        2.    State Sovereign, Legislative, or Diplomatic Immunity likewise does not apply to Plaintiff's state law claims. ................................................................................................ 10

        3.    Defendant is a "person" under the TCPA and the calls at issue here are subject to the TCPA's provisions.......................................................................................................... 14

    B.    Defendant's remaining mish-mash of arguments must also be denied.......................... 16

        1.    Plaintiff satisfies the pleading requirements of Rule 8(a). ....................................... 16

        2.    The calls were "telemarketing" under the PTRA. ..................................................... 17

        3.    The statute of limitations for Plaintiff's PTRA claims is six years. The statute of limitations has therefore not expired................................................................................... 19

CONCLUSION................................................................................................................. 19

CERTIFICATE OF SERVICE ........................................................................................ 20

## INTRODUCTION

The Court should deny Defendant Matthew Bradford's ("Defendant's") motion to dismiss in all respects.

*First*, the illegal conduct at issue here–telephone calls hawking a "town hall" event to sell ObamaCare–is not subject to any form of sovereign, legislative, or diplomatic immunity. Plaintiff's federal claims allege political and commercial conduct so outside the traditional ambit of protected legislative activity recognized by the Supreme Court and ThRid Circuit such that it is not immune. Similarly, Plaintiff's state law claims allege conduct that Defendant conducted

outside the scope of his employment as a state representative as the calls were made for personal and political purposes. Finally, the Defendant is a "person" subject to the TCPA's provisions.

*Second*, the court should likewise dispense with the Defendant's remaining mishmash of arguments as they are either so insufficiently developed as to prevent the Plaintiff from formulating a coherent response to them or are patently incorrect as a matter of law. The Plaintiff's claims mirror those in his cases and countless others which this Court and others have held sufficiently pled claims to relief. There is no other basis to dismiss this case.

As a result, this Court should therefore deny Defendant's motion.

## FACTUAL BACKGROUND

Despite Defendant's chagrin that Plaintiff caught him making illegal prerecorded telemarketing calls with an ATDS to a number on the Do Not Call Registry, the Plaintiff brought this action to enforce a clear law that means what it says–don't call certain protected numbers or numbers on the Do Not Call Registry. There is nothing wrong with Plaintiff doing exactly what Congress intended for him to do–enforcing the law. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *4 (E.D. Pa. July 15, 2021) (rejecting "the notion that expertise in plaintiff-side TCPA litigation is necessarily bad").

Plaintiff, who had no previous interaction with the Defendant and isn't even in the Defendant's district or Defendant's constituent, received at least five calls from him to hawk ObamaCare. (Compl. ¶ 27). These calls were placed to Plaintiff's telephone number, which is protected as it is charged for the calls and on the Federal and Pennsylvania Do Not Call Lists. (Compl. ¶¶ 25–34). The calls were placed using prerecorded voices and an ATDS in violation of the TCPA. (Compl. ¶¶ 39–52). The calls were placed for commercial marketing purposes, namely, to sell health insurance via the Pennie/ObamaCare health marketplace. (Compl. ¶ 2).

**LEGAL STANDARD**

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

**LAW AND ARGUMENT**

**A. <u>The conduct here is not entitled to any form of immunity.</u>**

Unlike Nelson Muntz at the Model U.N., Mr. Bradford is not entitled to immunity as to the Plaintiff's federal or state law claims. *See The Simpsons: Das Bus* (Fox television broadcast Feb. 15, 1998). Plaintiff's federal claims survive because the unlawful activity falls outside the ambit of the Speech or Debate Clause. Plaintiff's state law claims likewise survive because the Defendant was not acting within the scope of his employment as a Representative of the General Assembly when he placed the calls, which were made for political and personal purposes. Finally, the Defendant is a "person" under the TCPA and is therefore subject to its provisions.

4

1. **Federally proscribed telemarketing calls hawking a "town hall" event to sell ObamaCare are not subject to absolute sovereign or legislative/diplomatic immunity under the Speech or Debate Clause.**

Here, the majority of Plaintiff's claims arise out of the Telephone Consumer Protection Act ("TCPA"), a federal statute Congress enacted to protect consumers from annoying and harmful telemarketing conduct. The specific conduct here–five pre-recorded "robocalls" advertising an event to sell ObamaCare–is not traditionally covered under the Speech or Debate Clause. Therefore, there is no legislative/diplomatic immunity for Plaintiff's TCPA claims.

Defendant's brief applies the wrong standard for immunity for Plaintiff's federal TCPA claims. Defendant cannot avail himself of absolute sovereign immunity because he did not act in his official capacity when he made the illegal robocalls complained of herein. Plaintiff does not sue the Commonwealth, so the 11th Amendment does not apply. Nor does the Plaintiff sue the Defendant in his official capacity as a representative of the Commonwealth's General Assembly or at all arising out of the performance of his official duties. Shockingly, and quite tellingly, Defendant does not allege a lack of subject matter jurisdiction. The Third Circuit has held that claims of Eleventh Amendment Immunity divest federal courts of subject matter jurisdiction and are therefore properly brought under Rule 12(b)(1), not Rule 12(b)(6). *In re Hechinger Inv. Co. of Delaware, Inc.*, 335 F.3d 243, 249 (3d Cir. 2003). Defendant asserts no 12(b)(1) defense.

Here, the Plaintiff sues the Defendant in his individual capacity concerning quintessentially political and/or commercial actions which just so happened to take advantage of Defendant's position as a state representative. The Third Circuit has already held that similar activities, such as "disparaging public comments about [political rivals]" are not "quintessentially legislative" and therefore carried out only in the legislators' private capacities. *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 190 (3d Cir. 2021). And qualified

5

immunity does not apply because the conduct "violate[s] clearly established statutory . . . rights," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiff alleges that Defendant violated a statute that "stands out as a model of clarity." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019). Therefore, the *correct* question to ask is if the Defendant is entitled to *legislative/diplomatic immunity* for his alleged violations of federal law. He isn't.

State legislators' immunity from federal claims comes from federal common law, which "in civil cases . . . is coterminous with that of the immunity provided by the Speech or Debate Clause." *Larsen v. Senate of Pa.*, 152 F.3d 240, 249 (3d Cir. 1998). And the Speech or Debate clause is no mere judicial creation like qualified immunity. The Clause is a doctrine of actual immunity rooted in the Constitution itself, which provides in relevant part that "The Senators and Representatives . . . for any speech or debate in either House, . . . shall not be questioned in any other place." U.S. CONST. art. I, § 6, cl. 1. As with any question of statutory interpretation, therefore, this Court's inquiry "begins with the text. *Ross v. Blake*, 578 U.S. 632, 638 (2016).

The text of the Speech or Debate clause shines forth as a "model of clarity," as the Framers so justly intended. The limits are narrow: applying only to "speech or debate in either House." U.S. CONST. art. I, § 6, cl. 1. The inquiry should stop there. A robocall *of any type* is not a "speech of debate in either House." The Clause does not protect the activity alleged here. And, turning to the original public meaning of the Speech or Debate clause at the time of its adoption, the Clause was understood to protect the separation of powers, that is, free *debate* and *deliberation* without threats from the Executive or the populace via the Judiciary. *Kilbourn v. Thompson*, 103 U.S. 168, 201–02 (1880). It was never intended to shield non-legislative speech.

With this historical frame in mind, it is clear that the Framers never intended the Clause to apply to activities taking place *after* a law was enacted, nor did they intend for the Clause to

6

apply to non-parliamentary activities. Indeed, the Clause's forerunner, the 1689 English Bill of Rights, was widely understood at the time of the ratification to strictly apply only to proceedings in Parliament. *See* Joseph Story, *Commentaries on the Constitution of the United States* § 863 (1833) ("This privilege is strictly confined to things done in the course of parliamentary proceedings, and does not cover things done beyond the place and limits of duty."). The scope of this privilege was so narrow, in fact, that mere *publication* of a speech containing libelous matter would subject the English lawmaker "to an action and prosecution therefor, as in common cases of libel." *Id.* Although Story observed that differences in English and American legislation cover publication of speeches and debates in the latter, the "privilege of debate and speech in congress" nevertheless remained narrow, in accord with the Anglo-Saxon tradition. *Id.* Otherwise, a legislator would obtain the "right to defame others under color of a performance of the duties of his office" and thereby impugn a citizen's character "without the possibility of redress." *Id.*

Of course, the Plaintiff is not ignorant of the extensive line of Supreme Court precedent expanding, justly or unjustly, the scope of the Speech or Debate Clause. Nevertheless, even this precedent does not extend as far as to render the conduct at issue here legislatively immune. Simply put, the Supreme Court has held that a legislator is immune for "all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (cleaned up). What actions are within this sphere? Acts which are "quintessentially legislative" and/or "integral steps in the legislative process." *Id.* at 54–55. However, acts which are merely "casually or incidentally related to legislative affairs but not a part of the legislative process itself" are not immune. *United States v. Brewster*, 408 U.S. 501, 528 (1972).

Importantly here, "political activities," such as "errands, appointments with Government agencies, assistance in securing Government contracts, newsletters to constituents, news releases,

7

and speeches delivered outside the Congress" are all unprotected, non-immune activities. *Id.* at 512. Even temporarily putting aside the issue of whether the event at issue here would have been commercial and encouraged the Plaintiff to go to the Pennie website and purchase ObamaCare, or if the event merely was designed to inform the Plaintiff about ObamaCare, neither is sufficiently legislative to qualify for legislative immunity under even an expanded view of the Speech or Debate Clause. Indeed, even if nothing was intended to be sold at the event and merely only was designed to inform individuals about ObamaCare, the event is still far more political than legislative and falls squarely within the unprotected activities outlined in *Brewster*.

First, the undisputed description of the event proffered by the Defendant himself demonstrates it is political, not legislative. The self-styled "information session" was run entirely by four *Democrat* representatives. (Def's. Br. at 22, ECF No. 8-1). Plaintiff is not a constituent of any of the listed representatives, so it could not possibly have been offered as a constituent service. Even so, as *Brewster* makes clear, constituent services are only incidentally related to the legislative process and are not immune. The point of contact for the event was the House *Democratic* Communications Office. (*Id.* at 23) (emphasis added). The call and event were paid for not by Pennsylvania taxpayer dollars but rather by the Democrat Caucus, a political entity.

The stated purpose of the event was as an "educational event on obtaining health insurance coverage." (*Id.* at 22). This description of the event fits neatly into the ambit of unprotected activities that the Supreme Court already held were "political" and therefore not subject to the Speech or Debate Clause in *Brewster*. The event was a *Democrat* event organized for political purposes. Moreover, the event was co-sponsored by the NAACP, a self-described political advocacy organization. *Our History*, NAACP, https://naacp.org/about/our-history [https://archive.is/H4G97] ("[T]he NAACP's mission is to ensure the *political*, educational,

equality of minority group citizens.") (emphasis added); *see also, About NAACP*, NAACP, https://naacp.org/about [https://archive.is/D2EV6] ("[O]ur network of members across the country works to secure the social and *political power* that will end race-based discrimination.") (emphasis added). As such, the call was clearly made for political purposes.

In fact, the event was even more commercial than political and therefore even further outside the ambit of the Speech or Debate Clause. The event included two speakers from Pennie, Pennsylvania's ObamaCare exchange. The event was therefore designed to sell ObamaCare plans. A review of the Pennie website demonstrates that, like all things in life, ObamaCare is not free. Pennie sells a *commercial* product–health insurance–provided by a myriad of *commercial* companies (e.g. Cigna Healthcare, Independence Blue Cross, and Ambetter), some of which are publicly traded.[1] *View Plan Details*, PENNIE, https://enroll.pennie.com/hix/private/planselection? insuranceType=HEALTH [https://archive.is/ZrOmu]. In fact, the cheapest plan available on the Pennie website is a $213.59/month plan from Oscar, which unironically has a 1-star quality rating. *Id.*; *see also NFIB v. Sebelius*, 567 U.S. 519, 652–53 (2012) (discussing how "Congress . . . impressed into service third parties . . . to offset the undesirable consequences of the regulation.") (Scalia, J., dissenting).:



---

[1] For instance, Cigna trades under NYSE Ticker CI.

"We do not doubt that the buying and selling of health insurance contracts is commerce generally subject to federal regulation." *Id.* at 650 (Scalia, J., dissenting). It is already settled law in this circuit that even informational calls advertising the *free* benefits of a particular healthcare plan are commercial solicitations under the TCPA. *Fiorarancio v. WellCare Health Plans, Inc.*, No. CV 21-14614 (SRC), 2022 WL 111062, at *3 (D.N.J. Jan. 11, 2022) (noting that even free services "often come with strings attached"). The calls at issue here, advertising a town hall event for Obamacare, are no different. Indeed, although the event "may have been informational on [its] face," it is clear that it was "part of a larger marketing, or profit-seeking, scheme" in which the Plaintiff "might have been exposed to further solicitations or advertisements." *Id.*

Defendant's "defense of the indefensible" must be denied. *King v. Burwell*, 576 U.S. 473, 509 (2015) (Scalia, J., dissenting). Defendant does not enjoy federal common law legislative/diplomatic or sovereign immunity for the calls at issue here. Even if this Court commits "jiggery-pokery" and rejects Plaintiff's contention that the calls were made for commercial purposes, the calls clearly fall outside the ambit of the Speech or Debate Clause because they were the same type of political conduct the Supreme Court already held is not subject to immunity in *Brewster. Id.* at 506 (Scalia, J., dissenting).

## 2. State Sovereign, Legislative, or Diplomatic Immunity likewise does not apply to Plaintiff's state law claims.

Plaintiff's state law claims fare just as well as his federal claims on the immunity front. Legislative immunity from state law claims is governed by the Pennsylvania Constitution's Speech or Debate Clause, which states in relevant part that "[t]he members of the General Assembly . . . shall not be questioned in any other place . . . for any speech or debate in either House." PA. CONST. art. II, § 15. For the purposes of this case, the difference of language is a mere distinction without a difference. In interpreting Pennsylvania's Speech or Debate Clause,

the Commonwealth's Supreme Court looks to federal case law to guide its interpretation. *See Consumers Educ. & Protective Ass'n v. Nolan*, 368 A.2d 675, 680–81 (Pa. 1977). Therefore, Plaintiff's arguments above, including *Brewster's* reasoning, remain equally appliable to his state law claims for violations of the Pennsylvania Telemarketer Registration Act.

It is true that, unlike for Plaintiff's federal claims, a Commonwealth employee may still not be sued in their individual capacity, so long as the employee was acting within the scope of their duties. *Greenberg v. Caesars Ent. Corp.*, No. CIV.A. 14-4796, 2015 WL 2069411, at *2 (E.D. Pa. May 5, 2015). This is so even if the employee committed an intentional tort within the scope of their duties. *Id.* However, the Court cannot here conclude as a matter of law that the allegations in the Plaintiff's complaint arise entirely within the scope of the Defendant's duties as a representative in the General Assembly because the actions were both political and personal. *Zimmerman v. Corbett*, No. 1:13-CV-02788, 2015 WL 539783, at *11 (M.D. Pa. Feb. 10, 2015).

The scope of a Commonwealth employee's duties is informed by the traditional common law doctrine of *respondeat superior*, as articulated in Section 228 of the Restatement (Second) of Agency. *See Crawford v. Com. of Pa.*, No. CIV.A. 1CV03-693, 2005 WL 2465863, at *11 (M.D. Pa. Oct. 6, 2005), *vacated on other grounds*, No. 1:CV-03-0693, 2006 WL 148881 (M.D. Pa. Jan. 19, 2006). Under the Second Restatement, conduct falls within the scope of employment only if "it is of the kind he is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master." Restatement (Second) of Agency § 228 (Am. L. Inst. 1958). "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.*

11

The scope of the Speech or Debate Clause informs the scope of a state legislator's "duties." Political conduct is not within the scope of a state representative's duties because it is explicitly *unauthorized*. Pennsylvania law forbids Commonwealth employees from participating in political activity during their working hours, among other restrictions on political conduct. *See generally* 71 PA. CONS. STAT. § 2705. Moreover, in keeping with the Speech or Debate Clause, the facts of this case demonstrate that the conduct occurred outside the "time [and] space" limits of the Pennsylvania Capitol Complex and Defendant's position as a lawmaker there, which is to draft, discuss, and vote on legislation. There were no House Session Days on September 20, 2019, October 10, 2019, January 31, 2020, or December 30, 2020, the only call of which Plaintiff has actual voice content. *House Session Days*, *2020 Regular Session*, PA. HOUSE, https://www.legis.state.pa.us/SessionDays.cfm?SessionYear=2020&SessionInd=0&Chamber=H [https://archive.is/TcmEY]; *House Session Days*, *2019 Regular Session*, PA. HOUSE, https://www.legis.state.pa.us/SessionDays.cfm?SessionYear=2019&SessionInd=0&Chamber=H [https://archive.is/wip/vlDcE]. Moreover, the event, which occurred on January 5, 2021, occurred at 6:30 PM, outside the working hours of a State Representative that day.

More importantly, actions motivated by political desires to curry favor with constituents, advance one's political prospects, or advance a party agenda, are also insufficient to arise within the scope of a state representative's duties. If Defendant was to, for instance, help a constituent sign up for food stamps, coordinate with a civil group to gain election support, or speak at a campaign fundraiser for himself or another Democrat, he would nevertheless act outside the scope of his duty as such actions would be motivated by political gain. *Zimmerman*, 2015 WL 539783, at *11 (citing *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010)). So too here, as the Defendant sought to curry favor with individuals, including members of the NAACP

of Greater Norristown, sought to further his political prospects, and sought to advance the

Democrat Party's agenda of "protec[ing], strengthen[ing], and build[ing] . . . the Affordable Care

Act marketplace," by holding the town hall and advertising for it via illegal telemarketing

robocalls. *Achieving Universal, Affordable, Quality Health Care*, DEMOCRATS,

https://democrats.org/where-we-stand/party-platform/achieving-universal-affordable-quality-

health-care/ [https://archive.is/4Oj27].

     Additionally, actions motivated solely by personal concerns are patently insufficient to

arise within the scope of a state employee's duties. If Defendant was to, for instance, hold a

community party where food and drinks were distributed, he would nevertheless act outside the

scope of his duty as such actions would be motivated by personal gain. *Robus v. Pennsylvania

Dep't of Corr.*, No. CIV A. 04-2175, 2006 WL 2060615, at *8 (E.D. Pa. July 20, 2006) (holding

that prison guard acted outside the scope of his duties because his abuse of an inmate was

motivated by personal reasons and concerns). So too here, as the Defendant sought his own

personal benefit in the public eye by hosting an event not for his constituents but for other

Pennsylvania residents to appear like he was working. Moreover, Defendant sought to advance

his own financial gain by selling ObamaCare, for which he would presumably get a commission.

     In sum, then, for the reasons stated immediately above, the calls were made for both non-

legislative political purposes of the same kind the Supreme Court held were unprotected, non-

legislative activities in *Brewster* and for personal/commercial purposes in that they were placed

to sell ObamaCare. Although the Defendant does enjoy some immunity in his position as a

representative in the General Assembly, the calls were made to further his own political aims and

personal interests. Defendant was therefore acting outside the scope of his duty when he made

the calls, and he is not entitled to immunity for those actions under Pennsylvania law.

### 3.   Defendant is a "person" under the TCPA and the calls at issue here are subject to the TCPA's provisions.

Similarly, the Defendant is a "person" under the TCPA and subject to its provisions. The TCPA prohibits "any person" from making the illegal calls described in the Complaint. And the Communications Act of 1934, of which the TCPA is a part, defines a "person" as "an individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39).

As explained above, Defendant, who is sued here in his personal, individual capacity, and not his official capacity, is an "individual" under the plain meaning of the Communications Act and therefore subject to its provisions. And although the FCC clarified that state and federal governments are not "persons" subject to the TCPA, Defendant nevertheless was *not acting in his official capacity* as he was not making calls in the conduct of official government business and therefore cannot qualify as a governmental caller. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Broadnet Teleservices LLC Petition for Declaratory Ruling*, Order on Reconsideration, 35 FCC Rcd 15052, 15056–59 (2020) (holding that a "state government caller making calls *in the conduct of official government business* is not a 'person' subject to section 227(b)(1) of the TCPA") (emphasis added) [hereinafter *Broadnet*].

In determining whether or not a caller is calling in the conduct of official government business under *Broadnet*, the relevant standard is whether immunity applies or whether it is lifted. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) (holding that federal government did not lift its immunity when it sent recruitment text messages for the Armed Forces). As described above, the Defendant enjoys no immunity because the calls were made for political and commercial purposes. Because the calls were not made for legislative purposes, the calls were therefore not made in the conduct of official government business and not subject to

immunity. As the Court made clear in *Brewster*, speeches delivered outside the Congress and constituent communications do not fall within the ambit of the Speech or Debate Clause, and, as such, no immunity applies. *Brewster*, 408 U.S. at 512.

More importantly, *Broadnet* does not categorically exempt state legislators from the TCPA's provisions. *Broadnet* is merely an interpretative rule clarifying the well-established limits of legislative immunity under the Speech or Debate Clause and does not have the force and effect of law. No FCC order can purport to extend the limits of federal common law or the Constitution. The Supreme Court made as much clear when it decided *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc*, 139 S. Ct. 2051 (2019). In *PDR Network*, the Supreme Court considered whether the FCC's regulations regarding faxes were merely "interpretative rules" or an agency rulemaking subject to *Chevron* deference.

In *PDR Network*, the Supreme Court held that the FCC's guidance was merely "interpretative" because the terms were "unambiguous." *See PDR Network*, 139 S. Ct. at 2064 (Kavanaugh, J., concurring). And, under federal law, the meaning of "person," and the extent to which liability attaches to the same, is unambiguous. *Id.* A "person" includes an "individual" acting, as here, for political and commercial purposes, regardless of their position as a lawmaker.

Moreover, applying immunity doctrines to political callers based on their speech is unconstitutional. In *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, the Supreme Court considered the constitutionality of the TCPA and a related provision exempting telephone calls made to collect government-backed debt, like student loans. 140 S. Ct. 2335 (2020). The Court made clear that exemptions to the TCPA that single out a type of speech, such as the government-debt provision, constitute content-based restrictions that flunk strict scrutiny. 140 S. Ct. at 2346–47. So too here. If state legislators were not considered "persons" for TCPA purposes, this reading

would have the effect of an unconstitutional content-based exemption because it singles out a certain type of speech–speech made by state legislators–and prefers it to other forms of speech.

Importantly, both *Broadnet* and *Campbell-Ewald* clarified that even if the government retains its immunity, any contractors the government hires "do not acquire the Government's embracive immunity." 577 U.S. at 166. Therefore, in the unlikely event that this Court were to find that the Defendant was entitled to any form of immunity, the Court should nevertheless order the Defendant to disclose the identity(ies) of any person who may be liable, to include the payor(s) for the calls, any contractors the Defendant hired to make the calls, the owner(s) or operator(s) of the telephone system, the other user(s) of the telephone system, and any other person involved in placing them, in line with the Supreme Court's decision in *Campbell-Ewald*.

## B. **Defendant's remaining mishmash of arguments must also be denied.**

Like Lionel Hutz, Defendant's mishmash of other arguments is nothing more than a briefcase "full of shredded newspapers." *See The Simpsons: Marge Gets a Job* (Fox television broadcast Nov. 5, 1992). *First*, Defendant complains about Plaintiff's pleading without specifying what Defendant is complaining about, so the argument fails. *Second,* Defendant claims he was not making "telemarketing" calls. As explained above, selling health insurance is a commercial marketing activity. *Finally*, Defendant claims Plaintiff's claims are barred by a two-year statute of limitations. In reality, the statute of limitations is six years and has not tolled.

### 1.   **Plaintiff satisfies the pleading requirements of Rule 8(a).**

Among other matters, FED. R. CIV. P. 8(a) requires that the Plaintiff include a short and plain statement of the grounds for jurisdiction, a short and plain statement of the claim showing the pleader is entitled to relief, and a demand for the relief sought. Plaintiff's complaint contains

all the statements required by Rule 8(a). Defendant does not point to which subsection of Rule 8(a) Plaintiff has allegedly not met, nor even what the alleged deficiency is.

Like the pot calling the kettle black, Defendant merely states in a conclusory fashion that the Complaint "falls short of the requirements to establish a claim as articulated by the United States Supreme Court in *Iqbal* and *Twombly*." (Def's. Br. at 5, ECF No. 8-1). He merely restates portions of the Supreme Court's holding in *Twombly* without making any cogent argument. (*Id.* at 5–6). And although the brief seemingly takes issue with 18 numbered paragraphs in the Plaintiff's complaint, it provides absolutely no coherent legal or factual argument for why those paragraphs are allegedly insufficient to meet Rule 8's admittedly lax pleading standards.

Defendant's own conclusory statement that the Plaintiff's complaint contains "speculation rather than statements of fact" is specious at best and sanctionable at worst. (*Id.* at 5). Defendant takes issue, for instance, with multiple paragraphs in the complaint which merely summarize Plaintiff's experiences, or which describe the factual circumstances surrounding the calls. Defendant may disagree with the factual contentions. He may require the Plaintiff to prove them. But he can't claim that such allegations fail to meet Rule 8's requirements by his own fiat.

### 2.   The calls were "telemarketing" under the PTRA.

At issue here, the Pennsylvania Telemarketer Registration Act ("PTRA") requires, among other requirements, that a "telemarketer" or "telemarketing business" register with the attorney general "prior to offering for sale consumer goods or services." 73 PA. CONS. STAT. § 2242, 2243. Defendant makes two arguments for why he did not break the law. *First*, Defendant claims he fits neither under the statutory definition of a "telemarketer" or a "telemarketing business." *Second*, Defendant claims that he was not calling to offer any consumer goods or services for sale and was therefore not "telemarketing." Both arguments fail.

Defendant is a telemarketer. The statutory definition of a "telemarketer" is broad, including "*any person*" who "initiates . . . telephone calls to or from a consumer in this Commonwealth" "in connection with telemarketing." 73 PA. CONS. STAT. § 2242. Defendant is a person. The Defendant initiated multiple calls to Plaintiff, who is a consumer in the Commonwealth. And, as explained immediately below, those calls were made for "telemarketing" purposes.

Defendant was calling to offer information about healthcare. A plain-text reading of the statute makes clear that "telemarketing" can include "plan[s], program[s], and campaign[s]" that ultimately "induce the purchase of services." *Id*. The call need not directly nor explicitly solicit a particular product or service on the call. *Id.* The Plaintiff alleged that the calls were conducted as part of a campaign to induce the purchase of healthcare services. This is all the Plaintiff needs to allege at the Motion to Dismiss stage. And such an allegation is not merely based on threadbare assertions but has sufficient factual basis. The telephone call was made to solicit attendance at an event where ObamaCare and Pennie would be promoted. The ultimate goal of that event was to induce the purchase of the health plans offered in the Pennie ObamaCare marketplace.

Accordingly, the calls were placed for "telemarketing" purposes because they were part of a plan to induce the sale and purchase of health insurance. The Defendant advertised an event for information related to the sale and purchase of a consumer product/service, health insurance. ObamaCare is (at least nominally) healthcare, a consumer service, sold through the Pennie marketplace, whose representatives also attended. And, as Justice Scalia so eloquently observed, "We do not doubt that the buying and selling of health insurance contracts is commerce generally subject to federal regulation." *NFIB*, 567 U.S. at 650 (Scalia, J., dissenting). The calls were plainly telemarketing calls to induce interest in an event to sell a commercial service.

18

**3.   The statute of limitations for Plaintiff's PTRA claims is six years. The statute of limitations has therefore not expired.**

Defendant claims that Plaintiff's PTRA claims are subject to the six-month notice requirement contained in 42 PA. CONS. STAT § 5522. However, this notice requirement is only applicable to tort claims "against a government unit." *Id* at (a)(1). As explained above, Plaintiff brings his PTRA claims against the Defendant in his individual capacity, not his official capacity. Plaintiff is not bringing his PTRA claims against a government unit. Moreover, as described above, the Defendant does not enjoy any immunity against the Plaintiff's state law PTRA claims. Accordingly, the six-month notice requirement does not apply.

Defendant also claims that the Commonwealth's two-year statute of limitations for "civil penalties or forfeiture" applies. 42 PA. CONS. STAT § 5522(5). Not so. Plaintiff's claims under the PTRA serve as predicate acts for statutory recovery under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTP/CPL"). The UTP/CPL has a six-year statute of limitations. *Gabriel v. O'Hara*, 534 A.2d 488, 495 (Pa. Super. 1987). The calls, which occurred in 2019 and 2020, fall within the six-year statute of limitations. Because the statute of limitations has not yet tolled, the Court should not dismiss Plaintiff's PTRA claims on statute of limitations grounds.

**CONCLUSION**

For the foregoing reasons, the Court should Deny Defendant's motion.

Dated: **April 10, 2023**

_____/s/_____
Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

19

**CERTIFICATE OF SERVICE**

Plaintiff certifies that on April 10, 2023, he filed the foregoing on the Court's Electronic

Document Submission (EDS) system for *pro-se* litigants.


Dated: **April 10, 2023**

_____/s/_____

Andrew R. Perrong

*Plaintiff Pro-Se*

1657 The Fairway #131

Jenkintown, PA 19046

Phone: 215-791-6957

Facsimile: 888-329-0305

andyperrong@gmail.com
