IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW R. PERRONG<br>1657 THE FAIRWAY #131<br>JENKINTOWN, PA 19046<br><br>    Plaintiff<br><br>v.<br><br>MATTHEW BRADFORD<br>1406 REINER RD.<br>NORRISTOWN, PA 19403<br><br>AND<br><br>CLEO COMMUNICATIONS LLC<br>4949 HARRISON AVE. SUITE #200<br>ROCKFORD, IL 61108<br>    Defendants. | Case No. 2:23-cv-00510-JDW<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S AMENDED COMPLAINT**

**Preliminary Statement**

1. Plaintiff Andrew R. Perrong ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2. Plaintiff alleges that Matthew Bradford, a member of the Pennsylvania House of Representatives, commissioned a series of automated, illegal, prerecorded telemarketing "robocalls," *inter alia,* to sell health insurance via the Pennie/ObamaCare health marketplace and do additional advertising for related events. These calls were sent to a telephone number listed on the National Do Not Call Registry and to a number for which the called party is charged for the

1

calls, like Mr. Perrong's number, which is prohibited by the TCPA. The calls were made either directly by Bradford, or his agents, and he personally voiced the pre-recorded calls at issue. Moreover, such individuals directed co-defendant Cleo Communications LLC to place the calls.

3.      The Plaintiff never consented to receive such calls, which were placed to him for telemarketing purposes.

## Parties

4.      Plaintiff Andrew R. Perrong is a Pennsylvania resident, and a resident of this District.

5.      Defendant Matthew Bradford is a Democrat member of the Pennsylvania House of Representatives. He resides in this District at 1406 Reiner Rd., Norristown, PA 19403.

6.      Defendant Cleo Communications LLC is an Illinois corporation with its headquarters and principal place of business at 4949 Harrison Ave. Suite #200 Rockford, IL 61108. Cleo provides communications services in this District, as it did with Defendant Bradford, and placed the calls into this District.

## Jurisdiction & Venue

7.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

8.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls and text messages to the Plaintiff were placed into this District.

## The Telephone Consumer Protection Act

9.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing .

. . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits all Automated Calls To Protected Numbers

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

11. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services, like Mr. Perrong's VoIP service, for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch

3

systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

15. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes political calls. *See* FCC Enforcement Advisory: *Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

16. Importantly, this Court has already held that non-consensual, non-emergency calls placed using an ATDS or a prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that non-commercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

The National Do Not Call Registry

17. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

18. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

19. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

Defendants' Operations

20. Defendant Matthew Bradford is a Democrat member of the Pennsylvania House of Representatives.

21. Defendant Bradford uses telemarketing to solicit customers for the Pennie ObamaCare health insurance marketplace, and for other political events as he did with the Plaintiff.

22. To achieve this, Defendant Bradford makes use of robocalling services provided by Cleo Communications.

23. Information uncovered through discovery in this case has revealed that, once Defendant Bradford records a pre-recorded robocall, that recording is transmitted, along with a proposed list of numbers, to the Democratic Communications Office of the House of Representatives and then to Cleo, who handles the necessary steps to load it into its systems and ultimately places the calls.

24. One of the strategies used by Defendants involve the use of automated calls.

25. Defendants send out these call blasts *en masse* to telephone numbers throughout the area, hoping he reach someone interested in signing up for ObamaCare or attending another one of Bradford's political events.

The Calls to Mr. Perrong

26. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

27. Plaintiff's residential telephone number (the "Number"), 215-338-XXXX, is on the National Do Not Call Registry and has been continuously since November 22, 2017.

28. The Plaintiff has also listed the Number on the Pennsylvania Do Not Call Registry, and it had been on such registry for over a year prior to the calls at issue.

29. Despite these registrations, the Defendants sent at least five calls placed using an ATDS to Plaintiff on September 20, 2019, October 10, 2019, January 31, 2020, April 17, 200, and December 30, 2020, from the Caller ID 717-780-6000.

30. The Number is used as a residential line and for residential purposes.

31. The Number is not associated with a business.

32. That Number, which is assigned to a VoIP telephone service, is charged for each call it receives.

33. The VoIP telephone service for the Number is Voip.ms.

34. The service charges a ring charge of $0.08 for the provision of Caller ID Name lookup information for each call placed to the Number, even if the call is not answered.

35. The service also charges a per-minute charge of $0.009 per minute for voice charges for each minute of talk time, including voicemail time, for each call placed to the Number.

36. The Number is therefore "assigned to a . . . service for which the called party is charged for the call" and any calls placed to that number are subject to the restrictions enumerated in 47 U.S.C. § 227(b)(1)(A)(iii).

37. Plaintiff did not answer the September 20, 2019, January 31, 2020, or April 27, 2020 calls, and the calls went to voicemail, but the automated system did not leave a message.

38. Despite never having consented, Plaintiff answered a call on October 10, 2019. When plaintiff answered, he heard "dead air" and the call was disconnected from the remote end after four seconds.

39. On December 30, 2020, the Plaintiff answered the call. As soon as Plaintiff answered, a pre-recorded message, voiced by Defendant Bradford, played.

40. The message stated:
```
"I want to help you connect to the health care coverage plan
that best fits you and your family. Hello, this is State
Representative [inaudible]adford. Join me on Tuesday, January 5,
for a virtual information session on Pennie, the new way to
connect Pennsylvanians to health care coverage. This event will
focus on often underserved and overlooked communities, so please
spread the word. Featuring representatives from Pennie and the
NAACP of Greater Norristown, the virtual event will start at
6:30 PM Tuesday, January 5. You can reserve your spot and find
out more by visiting my website at repbradford.com. You can also
call my office for more information by dialing 610-222-3490
That's 610-222-3490. This is State Representative Matt Bradford.
Let's get connected on January 5."
```

Cleo's Liability

41. Cleo is a company that provides robocalling services.

42. Cleo's website includes a quotation from an unidentified "IT Specialist" with the "Pennsylvania House of Representatives," who is quoted as saying, "Cleo Streem is an extremely useful tool. The more we use it, the more we find other alternative uses and benefits." *Cleo Streem: Secure Network Fax and Interactive Communications*, CLEO, https://www.cleo.com/cleo-streem [https://archive.is/kb48P].

43. In fact, Cleo published a white paper in which it brags about Defendant Bradford and other Pennsylvania Democrat Representatives' use of its services. *Case Study: Pennsylvania*

7

*House of Representatives Simplifies Message Distribution for 250 Offices*, CLEO, https://tinyurl.com/yv4tkfz2 [https://archive.is/MM9jx].

44. In that white paper, Cleo states that its services "allow[] staff to *automatically* send messages via fax, email, text, or voice call to all of their constituents, no matter the size of the list." *Id.* (emphasis added).

45. Contractors, like Cleo, making calls on behalf of governmental entities, are "persons" subject to the TCPA. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Broadnet Teleservices LLC Petition for Declaratory Ruling*, Order on Reconsideration, 35 FCC Rcd 15052, 15059 (2020).

46. Moreover, the FCC has consistently held that a robocall platform provider involved in the calling conduct, like Cleo, may be "deemed to have initiated [the calls], considering the goals and purposes of the TCPA." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order*, 30 FCC Rcd 7961, 7980 (2015).

47. Courts have consistently applied this principal of platform liability to other providers, like Cleo, that provide the average end user the ability to send prerecorded robocalls using its platform, and held such providers liable under it, just as if they had placed the calls themselves. *Cunningham v. Montes*, 378 F. Supp. 3d 741, 750 (W.D. Wis. 2019) (holding owner of calling platform personally liable for the actions of its clients); *Spiegel v. EngageTel Inc.*, 372 F. Supp. 3d 672, 682, 686 (N.D. Ill. 2019) (denying summary judgment for defendant on platform issue).

Defendants' Use of an ATDS

48. The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

49. The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was *used* in violation of the TCPA centers around "whether the defendant employ[s] [ATDS] capacities to make automated calls," *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful." *Id.* at 879 (cleaned up).

50. In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns." *Id.* at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database. *See id.*

51. Under *Panzarella*, a system that uses a random or sequential number generator to produce each telephone number to be called from a list of telephone numbers, and then dials

those numbers, is by definition an ATDS. This is so even if the telephone numbers in the list themselves were not randomly or sequentially generated. *See id.* at 879-880.

52. The system(s) Defendants used to place the calls to Plaintiff are an ATDS because it would be illogical to use some non-automatic trigger to dial the number from a list, only to play a non-interested plaintiff a pre-recorded message. Moreover, it would be illogical to call the plaintiff, who already had health insurance and who is neither a constituent nor a Democrat, unless the caller was dialing randomly or sequentially, as opposed to some other select criteria.

53. Furthermore, playing prerecorded messages to sequential or random telephone numbers are hallmark indicia of ATDS systems. It supports the inference that Defendants used an ATDS, such as one which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list." *Facebook*, 141 S. Ct. at 1171 n.7. In fact, Cleo's admission that it dials "automatically" supports that assertion.

54. As this Court has remarked, other courts have held, post-*Facebook*, that allegations similar to those as here of the absence of a relationship between the parties, pre-recorded messages, and the random or automated nature of the automation device, are all indicia of use of a random or sequential dialing device that gives rise to the inference at the pleadings stage that an ATDS was used to make the calls. *See Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021). Post-*Facebook*, ATDS issues are summary judgment ones.

55. No facts exist here to support the conclusion that Defendants were calling a curated list of past individuals who they had previously interacted with. Plaintiff is not one of Mr. Bradford's constituents. He has no need for health insurance coverage. He never contacted Mr. Bradford for any reason, let alone to secure ObamaCare. By contrast to an entity that calls

phone numbers *en masse* to the public, an entity that uses a select list of persons based on specific triggering criteria does not place calls using an ATDS because such calling uses a database targeting existing persons' information rather than computer-generated tables or lists of individuals to be called. *See Panzarella*, 37 F.4th at 881–882.

56. *Panzarella* stands for the proposition that, when using a list of numbers to contact people, the computer must *use* something other than a random or sequential number generator to select the numbers to be called. Other triggers, such as birthdays or account delinquency, are neither random nor sequential, and thus *using* a dialer to place calls with such criteria is not using an ATDS. *See id.* at 879-881.

57. *Facebook* did not use an ATDS because it did not use random or sequential means to select numbers to send text messages to. Rather, it used *a specific user action*, compromised account security, to send the messages. *Facebook*, 141 S. Ct. at 1168. In other words, an account data breach, not random or sequential selection, was used to send the text message. Similarly, the Ninth Circuit recently held in *Brickman v. United States* that Facebook did not use an ATDS when it sent birthday text messages because the *birthdays*, not random or sequential number generators, were used to draw numbers to be called. 56 F.4th 688 (9th Cir. 2022).

58. Likewise, the defendant in *Panzarella* did not *use* an ATDS because it used the select criteria of delinquent borrowers to dial numbers. Put another way, delinquency, not random or sequential means, was used to select numbers from a list of numbers associated with student loan accounts and then dial them. *Panzarella*, 37 F.4th at 882.

59. Cleo does not include the ability to target individuals from a list. Rather, it only operates automatically in a sequential manner using CSV files, which are rudimentary Excel spreadsheets, and only permits users to customize such lists by adding single contacts to an

11

existing list. *See Cleo Stream Notify User Guide*, Cleo, https://cleo-infoeng.s3.us-east-2.amazonaws.com/PDF/Stream/Stream_Notify_UserGuide.pdf, [https://archive.is/gnlyK] ("Import a contact group. Click Choose File, navigate to a .csv file containing the desired contacts, and then click Import Contact Group.").

60. Moreover, no facts exist to show that Defendants called the Plaintiff in a targeted manner using what little customization Cleo has. Moreover, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

61. Plaintiff has sufficiently pled at the pleading stage more than adequate facts to support a showing that the system Defendants used to contact the Plaintiff meets the definition of an ATDS and that Defendants used random or sequential methods to select numbers to be called.

62. The most obvious such non-random and non-sequential criteria, persons who had explicitly expressed interest in obtaining government assistance from Bradford or for applying for ObamaCare, is obviously lacking here since the Plaintiff is not such a person. Moreover, if Defendants do proffer a potential criterion other than random or sequential selection used to make the calls, Plaintiff is nevertheless entitled to discovery on that issue to determine whether or not such a criteria was used in the Plaintiff's case and whether or not it was truly neither random nor sequential. This is a summary judgment issue, not a motion to dismiss one.

<u>Defendants' Conduct Violates the TCPA</u>

50. The communications received by Plaintiff demonstrate that they were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they sought to have him sign up for health insurance through Pennie, the state ObamaCare

health insurance marketplace. The calls therefore qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

51. The Plaintiff never provided his consent or requested the calls.

52. Defendants ignored multiple requests not to be called and indications that the Plaintiff was not interested.

53. In fact, Plaintiff reached out to Defendants in an effort to ascertain the legal basis for the calls, obtain an explanation why he was called, and request a copy of Defendants' do not call list and policy. Plaintiff received confirmation of neither.

54. Defendants called multiple times, despite Plaintiff's number being on the National Do Not Call Registry.

55. Based on this fact, it is evident that Defendants do not maintain Do Not Call policies and procedures as required by law.

56. Defendants also do not maintain an internal Do Not Call list, since Plaintiff clearly did not want to be called but Defendants called anyway.

57. The calls were not necessitated by any emergency.

58. Plaintiff was harmed by the calls. He was temporarily deprived of legitimate use of his telephone and his privacy was improperly invaded. The Plaintiff was charged for the calls. Moreover, they injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

**Legal Claims**
**Count One:**
**Violation of the TCPA's Prohibition Against Automated Calling**
**Via Pre-Recorded Message**

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending calls, except for emergency purposes, to the telephone number of Plaintiff using a prerecorded voice.

61. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

62. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

63. The Defendants' violations were willful and/or knowing.

**Count Two:**
**Violation of the TCPA's Prohibition Against Automated Calling**
**With an Automatic Telephone Dialing System (ATDS)**

64. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

65. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone number of Plaintiff using an ATDS.

14

66. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an ATDS in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

67. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

68. The Defendants' violations were wilful and/or knowing.

### Count Three:
### Violation of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

69. By placing at least five telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendants violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

70. This amounts to fifteen violations since Defendants committed three violations per call. The first violation is calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff without having a Do-Not-Call policy in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

71. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least fifteen violations

of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr. Perrong's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

72. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

73. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on his behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

74. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

### Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5).

C. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **June 11, 2023**

                                        _____/s/_____

Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

17