## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ANDREW R. PERRONG**, | **Case No. 2:23-cv-00510-JDW** |
| *Plaintiff,* | |
| v. | |
| **MATTHEW BRADFORD**, *et al.*, | |
| *Defendant.* | |

### <u>MEMORANDUM</u>

The best way to know what Congress intended when it passed a statute is to look at the text of the law. The Telephone Consumer Protection Act is no exception. That law seeks to limit robocalls and telemarketing calls to phone numbers on a do-not-call registry. The language of that statute contains three restrictions that matter in this case. *First*, it bars calls that use a prerecorded message to certain types of phone numbers, including those that pay a fee for receiving calls. Andrew Perrong has such a phone number and alleges that he received a prerecorded call, so he can pursue that claim. *Second*, the TCPA bars calls that an automatic telephone dialing system ("ATDS") places. An ATDS, in turn, is one that randomly or sequentially generates and stores or processes telephone numbers. That didn't happen in this case, so Mr. Perrong cannot pursue a claim about the use of an ATDS. *Third*, and finally, it prohibits telemarketing calls and

solicitations. The calls about which Mr. Perrong complains do not qualify, so he can't maintain claims asserting that they were.

## I.   BACKGROUND

Between September 2019 and December 2020, Mr. Perrong received five phone calls from the same caller. Mr. Perrong either did not answer or only heard dead air on the first four calls. When Mr. Perrong answered the fifth call, he heard a recording of Pennsylvania House of Representatives member, Matthew Bradford. The recording stated:

> "I want to help you connect to the health care coverage plan that best fits you and your family. Hello, this is State Representative [Matt Bradford]. Join me on Tuesday, January 5, for a virtual information session on Pennie, the new way to connect Pennsylvanians to health care coverage. This event will focus on often underserved and overlooked communities, so please spread the word. Featuring representatives from Pennie and the NAACP of Greater Norristown, the virtual event will start at 6:30 PM Tuesday, January 5. You can reserve your spot and find out more by visiting my website at repbradford.com. You can also call my office for more information by dialing 610-222-3490. That's 610-222-3490. This is State Representative Matt Bradford. Let's get connected on January 5."

(ECF No. 19 at ¶ 40.)

To make those calls, Rep. Bradford recorded a message and transmitted that call, along with a list of proposed phone number recipients, to the Democratic Communications Office of the Pennsylvania House of Representatives. The Communications Office then transmits the message and the list of phone numbers to Cleo Communications, LLC, which loads the information into its systems and places the calls.

Mr. Perrong filed this case on February 8, 2023. On April 28, 2023, I granted in part and denied in part a motion to dismiss. Mr. Perrong filed an Amended Complaint on June 15, 2023, to add Cleo as a defendant. The Amended Complaint asserts three claims, all for violations of the TCPA: (a) one for violating the 47 U.S.C. § 227(b) by using a pre-recorded message (Count I); (b) one for violating Section 227(b) by using an ATDS; and (c) one for violating Section 227(c) and its implementing regulations. Cleo moved to dismiss the Amended Complaint, and that motion is ripe for decision.

## II.   LEGAL STANDARD

A district court may dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (same). In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Id.* at 786-87 (same). First, the court must identify the elements needed to set forth a particular claim. *See id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *See id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give

rise to an entitlement to relief." *Id.* (quotation omitted). The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citation omitted).

## III.   ANALYSIS

### A.   Section 227(b) Claims

Section 227(b)(1)(A)(iii) prohibits making "any call ... using any automatic telephone dialing system **or** an artificial or prerecorded voice ... to any telephone number assigned to ... any service for which the called party is charged for the call[.]" 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Mr. Perrong asserts claims based both on the use of a prerecorded voice (Count I) and the use of an ATDS (Count II).

### 1.   Use of a prerecorded voice

Section 227(b)(1)(A)(iii) applies to calls that use an ATDS or an artificial or prerecorded voice. The statute's use of the word "or" demonstrates that it is disjunctive, meaning that a plaintiff need only satisfy one of those criteria to state a claim. *See Pellegrino v. United States of America Transportation Security Admin., Div. of Dept. of Homeland Sec.*, 937 F.3d 164, 178 (3d Cir. 2019). According to the Amended Complaint, Cleo placed five calls to Mr. Perrong's residential line on behalf of Rep. Bradford and played a prerecorded voice message on one of those calls. Mr. Perrong's residential line is assigned to a VoIP service that charges a ring charge of $0.08, regardless of if the call is answered, and $0.009 per minute of talk time, including voicemail time. Finally, Mr.

Perrong alleges that his telephone number is on the National and Pennsylvania Do Not Call Registries and that he did not consent to Rep. Bradford's calls. These allegations satisfy all the statutory elements of a prerecorded voice claim.

Cleo doesn't make any argument about Mr. Perrong's prerecorded voice claim in its opening brief. For that reason alone, I could deny its motion with respect to Count I. In its reply (when it's not supposed to be making new arguments), Cleo argues that Section 227(b)(1)(A)(iii) requires the use of an ATDS, but that's at odds with the statutory language. Cleo's argument ignores the statute's use of the word "or."  The statute, on its face, does not require the use of an ATDS.

Cleo also argues that Mr. Perrong's phone line does not fall within the scope of Section 227(b)(1)(A)(iii) because it is not a portable phone. Once more, it doesn't raise that argument until its reply brief, so I can disregard it. And again, Cleo's argument doesn't grapple with the statute's text. The statute applies to any telephone number assigned to "any service for which the called party is charged for the call[.]" 47 U.S.C. § 227(b)(1)(A)(iii). Mr. Perrong alleges that his telephone number is assigned to a "VoIP telephone service" and that he is "charged for each call it receives." (ECF No. 19 at ¶ 32.) That satisfies the statute.

### 2.     Use of an ATDS

As defined by the TCPA, an "automatic telephone dialing system" is a piece of equipment with the capacity "to store or produce telephone numbers to be called, using

a random or sequential number generator," and to dial those numbers. 47 U.S.C. §227(a)(1). In *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), the Supreme Court held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either [(a)] to store a telephone number using a random or sequential generator or [(b)] to produce a telephone number using a random or sequential number generator." *Id.* at 1167. Following that decision, the Third Circuit held that for a call to violate the TCPA's prohibition on the use of ATDS, the call must employ the system's capacity to use a random or sequential number generator to produce or store telephone numbers. *See Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 881 (3d Cir. 2022). It is not enough that the system *could* use a random or sequential number generator to produce or store telephone numbers; it must actually do so. *See id.*

The Amended Complaint alleges that "once Defendant Bradford records a pre-recorded robocall, that recording is transmitted, along with a proposed list of numbers, to the Democratic Communications Office of the House of Representatives and then to Cleo, who handles the necessary steps to load it into its systems and ultimately places the calls." (ECF No. 19 at ¶ 23.) The Amended Complaint further states that Cleo's system "operates automatically in a sequential manner using CSV files, which are rudimentary Excel spreadsheets, and only permits users to customize such lists by adding single contacts to an existing list." (*Id.* at ¶ 59.)

The question before me turns on the phrase "random or sequential number generator" in the TCPA. If the term refers to the generation of telephone numbers, then Cleo did not use a ATDS because it called the numbers on the list that Rep. Bradford provided. On the other hand, if the term applies to the generation of numbers that determine the order in which a machine calls the supplied telephone numbers *(e.g.*, which phone number is number 1, which is number 2, etc.), then Cleo might be using an ATDS. Neither the Supreme Court nor the Third Circuit has answered that question, so I'm left to construe the statute.

Congress did not define the term "number" in the TCPA. "Where Congress does not furnish a definition of its own, [a court] generally seek[s] to afford a statutory term its ordinary or natural meaning." *HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2176 (2021) (quote omitted). In the definition of "automatic telephone dialing system," Congress used the word "number" three times: (1) a reference to the equipment having the capacity to "store or produce telephone **numbers**;" (2) a reference to a "random or sequential **number** generator;" and (3) a reference to "dial[ing] such **numbers**." 47 U.S.C. § 221(a)(1)(A), (B) (emphasis added). "[W]ords repeated in different parts of the same statute generally have the same meaning." *Law v. Siegel*, 571 U.S. 415, 422 (2014). Context clues also matter. *See HollyFrontier*, 141 S. Ct. at 2179.

Using these principles, I conclude that all three uses of the word "number" in the definition of ATDS refer to a telephone number. The first reference to "number" leaves no

room for doubt; it says "telephone numbers." 47 U.S.C. § 227(a)(1)(A). The third reference is to "dial such numbers." *Id.* at § 227(a)(1)(B). The use of the verb "to dial" makes clear that the numbers in question are telephone numbers.[1] And the use of the adjective "such" indicates that the numbers in question are ones that the statute already referenced. That is, they are the numbers that subparagraph (A) references. Finally, there's the middle use of the word "number," referencing a "random or sequential number generator." *Id.* at § 227(a)(1)(A). Given that the other two references to "number in this paragraph of the statute refer to telephone numbers, it is reasonable to infer that the numbers that the number generator will generate are telephone numbers.

This conclusion is consistent with the Third Circuit's decision in *Panzarella*. In dicta in that case, the Third Circuit offered a hypothetical where Junk Call Corp. utilized an ATDS with two modes, an "automatic mode," in which the system dials random or sequential telephone numbers, and a "list mode," in which the system dials the telephone numbers imported from Junk Call's customer list. *See Panzarella*, 37 F.4th at 881. The Third Circuit said that only calls placed using the automatic mode would violate the TCPA. *See id.* That conclusion is consistent with my reading of the statutory definition of "number" because,

---

[1] For those too young to remember, a telephone used to have a physical dial that a user had to turn to select a digit to call. After the dial spun back to its home position, you did it again to select the second number. You did it sequentially until you dialed all the necessary numbers. International calls could take a while. And there were a lot more calls to wrong numbers in those days.

in the hypothetical in *Panzarella*, Junk Call's customer list supplied the phone numbers; the machine in question did not generate them.

Mr. Perrong attempts to avoid this conclusion by arguing that if Cleo's system randomly or sequentially called the numbers from Rep. Bradford's list, that would satisfy the TCPA's strictures on ATDS. But he doesn't grapple with the definition of the word "number" in the statutory text. Mr. Perrong suggests that the interpretation I have adopted is at odds with the possibility that a machine can "store ... telephone numbers to be called." 47 U.S.C. § 227(a)(1)(A). Not so. An ATDS could generate a list of numbers, store that list, and start calling, or it could generate each individual number and call the number immediately. Either way could satisfy the statutory definition of an ATDS, so there's nothing incongruous about the interpretation I've adopted and Congress's use of the word "store."

Mr. Perrong also offers his opinion about what my interpretation of an ATDS would mean and how the device was used historically. Of course, what he asserts in his brief is what he is "aware of." (ECF No. 30 at 8.) But what Mr. Perrong knows is not relevant. It's not in his Amended Complaint, and he's not an expert. The fact that Mr. Perrong has acquired for himself a couple of older machines doesn't change that fact. In any event, it doesn't matter. The statute says what it says.

**B.      Section 227(c) Claims**

Section 227(c)(5) provides a private right of action for violations of regulations that the FCC promulgates pursuant to the TCPA, including 47 C.F.R. § 64.1200(c)(2) and (d). To violate these regulations, a call must be a "telephone solicitation" or for "telemarketing purposes," which the regulations define as "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. §§ 64.1200(f)(13), (15). The calls at issue in this case do not fall within that definition.

The FCC adopted Section 64.1200, including the definition of "telephone solicitation" in 1992. Telephone Consumer Protection Act of 1991, 57 Fed. Reg. 48333 (October 23, 1992) (to be codified at 47 CFR 64.1200). At that time, "encourage" meant to "to instigate; to incite to action; to give courage to; to inspirit; to embolden; to raise confidence; to make confident; to help; to forward; to advise." Black's Law Dictionary 527 (6th ed. 1991). The calls that Mr. Perrong received told people about a forum that would provide information about an exchange where they could shop for health insurance. It was not trying to get them to purchase any particular product on that exchange. As I noted in my decision on Rep. Bradford's motion to dismiss, there's a difference between telling people about how to search for something and telling them what to choose. Because Rep. Bradford was not engaged in telephone solicitation or telemarketing as defined in the regulations, his calls to Mr. Perrong did not violate Section 227(c).

Mr. Perrong argues that the calls fall within the scope of the statute because they would bring people to a forum where they would learn about products they could buy, so they encourage a purchase. But the connection is too attenuated. Unlike in *Fiorarancio v. WellCare Health Plans, Inc.*, No. CV 21-14614, 2022 WL 111062, at *3 (D.N.J. Jan. 11, 2022), the forum was not touting particular services. It was touting an opportunity to learn about an exchange where customers could then make purchases. Encouraging people to learn about the forum is not the same as encouraging them to purchase one of the products available on that forum. That attenuation differentiates this case from *Fiorarancio* and renders the calls informational, rather than telemarking or solicitation.

## IV. CONCLUSION

The TCPA's statutory text forecloses Mr. Perrong's claims about the use of an ATDS and about telemarketing/solicitation calls. But the text authorizes his claim about the use of a prerecorded call, so he can pursue that one. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

September 18, 2023

11