# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Andrew R. Perrong,           :
    Plaintiff             :
                        :    Case No. 2:23-cv-00510-JDW
                        :
vs.                    :
                        :
Matthew Bradford,         :
    Defendant         :

## AMICI CURIAE BRIEF OF THE REPUBLICAN AND DEMOCRATIC CAUCUSES OF THE SENATE OF PENNSYLVANIA, AND THE REPUBLICAN CAUCUS OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES, IN SUPPORT OF REPRESENTATIVE BRADFORD'S MOTION FOR SUMMARY JUDGMENT

Rodney A. Corey, Esq. (Pa. 69742)
James G. Mann, Esq. (Pa. 85810)
Office of Chief Counsel
House Republican Caucus
Pennsylvania House of Representatives
Suite B6, Main Capitol
Harrisburg, Pa. 17120
(717)783-1510

Crystal Clark, Esq. (Pa. 91069)
General Counsel
Senate Republican Caucus
Room 350, Main Capitol Bldg.
Harrisburg, Pa. 17120
(717) 787-6259

Ronald N. Jumper, Esq. (Pa. 64346)
Shannon A. Sollenberger, Esq. (Pa. 308878)
Office of Chief Counsel
Senate Democratic Caucus
Room 535, Main Capitol Bldg.
Harrisburg, Pa. 17120
(717) 787-3736

Dated:  December 15, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………….…………………………………ii,iii

STATEMENT OF INTEREST OF PROPOSED *AMICI CURIAE* ………..…….1

INTRODUCTION..................................................................................................2

SUMMARY OF ARGUMENT ...........................................................................5

ARGUMENT…………………………………………………………………….5

I.   Calls made by state government callers in the conduct of official business are not calls made by "persons" under the TCPA.

II.  Providing Information to Pennsylvania residents concerning government programs serves a legislative purpose under the House Rules.

III. Mass communications by Pennsylvania House legislators were generally authorized for legislative purposes during the 2019-2020 legislative term.

A. House mass communications, including telemarketing activities and robocalls, were only limited during a restricted period before an election.

B. Four of the calls listed in the amended complaint did not fall within a restricted period.

C. The April 17, 2020 call was permitted as an exception concerning public and private resources available to mitigate the COVID disaster emergency.

IV.  The Pennsylvania Senate's various Rules also permit legislatively-sponsored "mass" communications.

CONCLUSION …………………………………………………………………..17

# TABLE OF AUTHORITIES

## Cases

<u>Precision Mktg., Inc. v. Com., Republican Caucus of the Senate of PA/AKA Senate of PA Republican Caucus</u>, 78 A.3d 667, 672 (Pa. Cmwlth 2013) ..……….…... 1

<u>Perrong v Bradford</u>, 2:23-cv-00510-JDW ………………………….……..3,4

<u>Schuppe v Harris & Harris, Ltd.</u>, No. 18 C 8221, 2019 WL 2473832 (N.D. Ill. June 13, 2019)………………………………………………………….…....6

## Statutes

Pennsylvania Health Insurance Exchange Authority, 40 Pa.C.S. §9101 *et seq* …...3

40 Pa.C.S. §9102(3) ………………………………………………………….3

Telemarketer Registration Act, 73 P.S. §2241 *et seq* ...……………………………3

Telephone Consumer Protection Act, 47 U.S.C. §227 ..………………………3,4,5

Communications Act of 1934, 47 U.S.C. § 153(39) ………………………………6

46 P.S. §42.121h ………………………………………………………….....8

46 P.S. §42.102(b) ………………………………………………………...16

46 P.S.§42.101a …………………………………………………...………15

## Administrative Rulings & Determinations

<u>In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Broadnet Teleservices LLC Petition for Declaratory Ruling Nat'l Consumer L.Ctr. Petition for Reconsideration & Request for Stay Pending Reconsideration of Broadnet Teleservices LLC Petition for Declaratory Ruling Pros. Servs. Council Petition for Reconsideration of Broadnet Teleservices LLC Petition for Declaratory Ruling,</u> 35 F.C.C. Rcd. 15052 …………………………………………..4,6

Government and Government Contractor Calls Under the Telephone Consumer Protection Act of 1991, 86 FR 9299-01……………………………………….......6

In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 U.S. Dep't of Health & Hum. Servs. Petition for Declaratory Ruling, No. CG02-278, 2023 WL 415622 (OHMSV Jan. 23,2023) …………………..……6

## Other Authorities

14 Summ. Pa. Jur. 2d Insurance § 1:2 (2d ed.) …………………….…………..3

Pa. Const., Art. II, § 1 ………………………………………..………….....7

Pa. Const., Art. II, § 11 ………………………………………………….....7

Pennsylvania House of Representatives General Operating Rules ………..…….7,9

Pennsylvania House of Representatives Ethical and Professional Conduct Rules

…………………………………………………………………..…….7,9

House Rule 14, Members' and Employees' Expenses ……………………………7

H.R. 1, P.N. 1 of 2019 ………………………………….…………7,9,10

2019-2020 Legislative Handbook ……………………………………………8

House Rule 1E …………………………………………………....…..9

House Rule 2E ……………………………………………...…..10

H.R. 834, P.N. 3491 …………………………………………………12

H.R. 2, P.N 3502. …………………………………………………13

Senate Ethical Conduct Rules, (S.R. 1, P.N. 1 of 2019) …………………………14

Senate Financial Operating Rules, (S.R. 2, P.N. 2 of 2019) ……………..……14,15

Rules of the Senate, (S.R. 3, P.N. 3 of 2019) …………………………….…14

Senate Financial Operating Rule 6(a)(10) ………………………………………..15

Senate Committee Management Operations ("COMO"), 46 P.S. 42.101a……….15

COMO Policy 2018:01, Electronic Communication Expenses …………………16

**STATEMENT OF INTEREST OF PROPOSED *AMICI CURIAE***

*Amici Curiae*, the Republican and Democratic Caucuses of the Senate of Pennsylvania and the Republican Caucus of the Pennsylvania House of Representatives, file this brief in support of Representative Matthew Bradford's Motion for Summary Judgment.

*Amici Curiae's* interest in this case stems from the fact that the members of Republican and Democratic Caucuses of the Senate of Pennsylvania and the Republican Caucus of the Pennsylvania House of Representatives are similarly situated to Representative Bradford.

Representative Bradford is a Member, and current Leader, of the Democratic Caucus of the Pennsylvania House of Representatives (House Democratic Caucus). The House Democratic Caucus is comprised of the elected Democratic State Representatives. *Amici*, the remaining three Caucuses of the Pennsylvania House and Senate, comprise the remainder of the elected Members of the Pennsylvania General Assembly (House and Senate). The four political party Caucuses have existed since 1857. Precision Mktg., Inc. v. Com., Republican Caucus of the Senate of PA/AKA Senate of PA Republican Caucus, 78 A.3d 667, 672 (Pa.Cmwlth. 2013).

The issues before this Court, concerning application of the Telephone Consumer Protection Act to Pennsylvania legislators, will have a direct and substantial impact on those legislators' ability to engage in legitimate legislative communications with Pennsylvania's residents. Therefore, *Amici* believe that this Court will benefit from their perspective on this dispute.

## INTRODUCTION

The fundamental question underpinning this litigation involves the ability of *all* of Pennsylvania's legislators to engage in mass communications with their constituents concerning government programs and initiatives. It extends beyond political party, the specific subject matter of the calls at issue here, or the particular chamber of the General Assembly. An adverse decision here would, by implication, determine that Pennsylvania State Representatives and Senators are not engaged in official business when using mass communications for these purposes and run contrary to decades of legislative practice in Pennsylvania.

At issue in this litigation are five phone calls received September 20, 2019; October 10, 2019; January 31, 2020; April 17, 2020; and December 30, 2020. Am Compl. (ECF No. 19 at ¶ 29). The December 30, 2020 call concerned a virtual information session related to Pennie. Id. at ¶ 40. Pennie refers to a statutorily authorized state program, the Pennsylvania Health Insurance Exchange Authority. See https://agency.pennie.com/about-us/, last accessed 12.7.2023; see also 40

Pa.C.S. § 9101 et seq, 14 Summ. Pa. Jur. 2d Insurance § 1:2 (2d ed.).[1]  The

Pennsylvania General Assembly determined that Pennsylvania Act 42 of 2019,

which created Pennie, was "necessary to maintain the Commonwealth's

sovereignty over the regulation of health insurance in this Commonwealth as

permitted by Federal law" and was "intended to meet these requirements while

retaining the Commonwealth's authority to regulate health insurance in this

Commonwealth." 40 Pa.C.S. § 9102(3).  Act 42 passed both the Pennsylvania

House of Representatives and Pennsylvania Senate unanimously in late June of

2019.[2]  Other calls related to a variety of legislative events and government topics.

See Transcripts, attached as Exhibit A.

While this Court dismissed Plaintiff's claims concerning those phone calls

under the Telemarketer Registration Act, 73 P.S. § 2241 et seq., claims concerning

the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, remain extant.

Perrong v. Bradford, Order re: Motion to Dismiss, (ECF No. 11).

---

[1] "Effective July 2, 2019, a series of statutes designed to provide health insurance
marketplace oversight… became effective. The Pennsylvania Health Insurance
Exchange Authority is established by these statutes, and provision is made for the
powers, duties, operations and limitations of such authority."

[2] See
https://ldpc6.legis.state.pa.us/cfdocs/billInfo/bill_history.cfm?syear=2019&sind=0
&body=H&type=B&bn=3, last accessed 12.7.2023.

As noted in this Court's Order regarding Representative Bradford's Motion to Dismiss, issued on April 28, 2023, the Federal Communication Commission's (FCC) 2020 Order in Broadnet Teleservices LLC concluded that "calls made by state government callers in the conduct of official business are not calls made by persons." Perrong v. Bradford, Order Re: Motion to Dismiss, (ECF No. 11, p. 4-5, ¶ 8) (*citations, quotation marks omitted*). That same paragraph in this Court's April 28, 2023 Order then posed hypothetical questions relevant to determining whether the phone calls by Representative Bradford were, in fact, official business. Id. The analysis that follows seeks to assist this Court and demonstrate the answer to the question of whether these calls were official business is a clear "yes." While this analysis also has value in the context of considering claims of Eleventh Amendment sovereign immunity, and at least one of the calls at issue likely falls within the TCPA's emergency exception (47 U.S.C.A. § 227(b)(1)(B), concerning a call initiated for emergency purposes), the focus of this *Amici Curiae* brief will be whether Representative Bradford – and by extension, every Member of the General Assembly – is a "person" under the TCPA.

Given that Representative Bradford is a Member of the Pennsylvania House of Representatives, much of the discussion below will focus on the rules and guidelines which apply to the House. *Amici* will, however, also explore the question in light of provisions that apply to all of Pennsylvania's Senators.

## SUMMARY OF ARGUMENT

Elected members of the Pennsylvania General Assembly do not fall within the meaning of "person" under the TCPA for the purposes these calls and this litigation.  Mass communications to constituents regarding the availability of government services and programs are a regular part of the official business conducted by House and Senate members.  Specifically, the calls placed by Representative Bradford fall well within the type of acceptable legislative communications envisioned by House and Senate rules relating to the appropriate use of legislative resources and were made at times authorized by House Rules. For these reasons, the Republican and Democratic Caucuses of the Senate of Pennsylvania and the Republican Caucus of the Pennsylvania House of Representatives respectfully request that this Court grant Representative Bradford's Motion for Summary Judgment.

## ARGUMENT

### I.  Calls made by state government callers in the conduct of official business are not calls made by "persons" under the TCPA.

The prohibitions of TCPA apply to "any person."  47 U.S.C. § 227(b)(1). For the purposes of the five calls listed in the complaint, Representative Bradford is not a "person" under the TCPA.

"Person" is not defined in the TCPA (47 U.S.C. § 227), however, "the Communications Act of 1934, which the TCPA amended, defines person as an

'individual, partnership, association, joint-stock company, trust or corporation.' 47 U.S.C. § 153(39)." Schuppe v. Harris & Harris, Ltd., No. 18 C 8221, 2019 WL 2473832, at *1 (N.D. Ill. June 13, 2019).

As previously noted by this Court, in 2020, the FCC clarified that "state government callers in the conduct of official business ... do not fall within the meaning of "person" in section 227(b)(1)."   In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Broadnet Teleservices LLC Petition for Declaratory Ruling Nat'l Consumer L. Ctr. Petition for Reconsideration & Request for Stay Pending Reconsideration of Broadnet Teleservices LLC Petition for Declaratory Ruling Pro. Servs. Council Petition for Reconsideration of Broadnet Teleservices LLC Petition for Declaratory Ruling, 35 F.C.C. Rcd. 15052 (2020); see also Government and Government Contractor Calls Under the Telephone Consumer Protection Act of 1991, 86 FR 9299-01.

As recently as this year, the FCC reiterated and clarified its "*2016 Broadnet Declaratory Ruling* and the *2020 Broadnet Order*" and "made clear that federal and state government callers are not 'persons' subject to the TCPA's restrictions if their calls are made in the conduct of official business".  In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 U.S. Dep't of Health & Hum. Servs. Petition for Declaratory Ruling, No. CG02-278, 2023 WL 415622, at *6, (OHMSV Jan. 23, 2023).

Even Plaintiff recognizes the FCC's expertise and authority regarding issues surrounding the TCPA.  Am. Compl. (EFC No. 19, ¶ 12)

## II. Providing Information to Pennsylvania residents concerning government programs serves a legislative purpose under the House Rules.

The Pennsylvania Constitution provides that the "legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."  Pa. Const., Art. II, § 1.  Further, both the Pennsylvania House and Senate have the power to adopt their own rules.  Pa. Const., Art. II, § 11.

On January 1, 2019, at the beginning of the 2019-2020 legislative term, the Pennsylvania House of Representatives adopted General Operating Rules, as well as Ethical and Professional Conduct Rules, by a bipartisan vote of 142-58.  H.R. 1, P.N. 1 of 2019.[3]

House Rule 14, entitled "Members' and Employees' Expenses," expressed the general rule that legislative funds may be utilized for "any legislative purpose or function."  H.R. 1, P.N. 1 of 2019, page 3, lines 24-25.[4]

---

[3]

https://www.legis.state.pa.us/cfdocs/billInfo/billInfo.cfm?sYear=2019&sInd=0&body=h&type=r&bn=1, last accessed 12.7.2023.

[4]

https://www.legis.state.pa.us/CFDOCS/Legis/PN/Public/btCheck.cfm?txtType=PD

The House Comptroller serves as "the chief fiscal officer of the House." 46 P.S. § 42.121h.  In this capacity, the Comptroller prepares and distributes a Legislative Handbook which serves as a guide to House expenses.  The 2019-2020 Legislative Handbook explained "Legislative Purpose" as follows:

> Legislative Purpose:  This threshold must be satisfied EVERY time a member seeks reimbursement.  Every legislative event needs to have a logical and substantive connection to **government work or programs** in order for the Comptroller to release taxpayer funds…

p. 41 (*emphasis in bold added*), attached as Exhibit B.

Further, the Legislative Handbook notes, with respect to "Events and Fairs," "[t]he event must support a legislative purpose." Id. at 40.

Of note, this general proposition concerning "legislative purpose" is not limited to state programs or state legislation.  It also includes information about local and federal government programs, initiatives, laws and ordinances.  As the closest state elected officials to the people of Pennsylvania (elected by House and Senate districts rather than statewide), Pennsylvania State Representatives and Senators often serve as a one-stop shop for constituents seeking information to answer their government questions.  As such, communications – regardless of form – on these issues are a regular part of the official business done by House and

---

F&sessYr=2019&sessInd=0&billBody=H&billTyp=R&billNbr=0001&pn=0001, last accessed 12.7.2023.

Senate members.  In this instance, the calls by Representative Bradford at issue in this litigation fall squarely within that "legislative purpose."

### III. Mass communications by Pennsylvania House legislators were generally authorized for legislative purposes during the 2019-2020 legislative Term.

Mass communications related to government programs and statutes are a recognized part of the services provided by Pennsylvania State Representatives in their official capacity.  The General Operating Rules of the Pennsylvania House of Representatives (which include Ethical and Professional Conduct Rules), adopted for the 2019-2020 legislative term contemplated the use of mass communications, including telemarketing activities and robocalls. HR 1, PN 1 of 2019.

### A. House mass communications, including telemarketing activities and robocalls, were only limited during a restricted period before an election.

Mass communications by Pennsylvania State Representatives for legislative purposes are, however, limited during a restricted period before an election.  House Resolution 1, Printer's Number 1, discussed above, defined "mass communication" as part of House Rule 1E:

> "Mass communication." The term shall include, but not be limited to, the following if they are paid for with House funds:
>
> (1) Any newsletter or similar mailing of more than 50 pieces a day in which the content of the matter is substantially identical.
> (2) Any electronic mail transmission to more than 50 addresses per day in which the content of the matter is substantially identical.

(3) Any public service announcement via radio or television broadcast that depicts the name, voice or image of a Member.
(4) **Any telemarketing activities or robocalls on behalf of a Member**, except for limited surveys to determine public opinion on various issues that do not use the name, voice or image of a Member.

H.R. 1, P.N. 1 of 2019, p. 45, lines 10-24 (*emphasis in bold added*).[5]

House Rule 2E, found in H.R. 1, explained:

(2) No mass communication shall be made at the direction or on behalf of any Member which is delivered to a postal facility or otherwise distributed during a restricted period. Nothing in this subsection shall apply to any mass communication:

(a) in response to inquiries or affirmative requests from persons to whom the matter is communicated,
(b) sent to colleagues in the General Assembly or other government officials, or
(c) which consists entirely of news releases to the communications media.

Id., p. 49, lines 9-18.

Finally, a "restricted period" during which mass communications were limited was defined as:

The 60-day period immediately preceding:

(1) a primary or general election in an even-numbered year; or
(2) an election at which the Member is a candidate.

Id., p. 46, lines 8-12.

---

5

https://www.legis.state.pa.us/cfdocs/billInfo/billInfo.cfm?sYear=2019&sInd=0&body=h&type=r&bn=1, last accessed 12.7.2023.

For the vast majority of the 2019-2020 legislative term, mass communications for legislative purposes were *not* limited by the House Rules.  In other words, as long as a mass communication had a legislative purpose, including information about government programs, it was not limited.

**B. Four of the calls listed in the amended complaint did not fall within a restricted period.**

Representative Bradford was not a candidate in any election in 2019, therefore, he was not subject to any restricted period concerning mass communications in that calendar year.

The 60-day restricted periods prior to the primary and general elections in 2020 occurred from:

- February 28, 2020, until March 27, 2020, when the Governor of Pennsylvania signed Act 12 of 2020, which moved the primary election from April 28 to June 2, 2020[6] and, as result, changed the starting and ending dates of the restricted period for the primary election;
- April 3, 2020, until the primary election on June 2, 2020;[7] and

---

[6] https://www.legis.state.pa.us/cfdocs/Legis/LI/uconsCheck.cfm?txtType=HTM&yr=2020&sessInd=0&smthLwInd=0&act=0012, § 1804-B, last accessed on 12.7.2023.

[7] https://www.electionreturns.pa.gov/Home/SummaryResults?ElectionID=83&ElectionType=P&IsActive=0, last accessed on 12.7.2023.

- September 4, 2020, until the general election on November 3, 2020.[8]

Four of the calls listed in the amended complaint (September 20 and October 10, 2019 as well as January 31 and December 30, 2020)[9] did not occur during a restricted period. Therefore, these mass communications providing information about government programs were well within the scope of Representative Bradford's legislative communications.

## C. The April 17, 2020 call was permitted as an exception concerning public and private resources available to mitigate the COVID disaster emergency.

Late 2019 into 2020 was a particularly unique time because of the COVID pandemic. On March 16, 2020, the House adopted a temporary rule to lift the limits on mass communications during a restricted period for the purpose of communicating information related to COVID-19. H.R. 834, P.N. 3491, p. 3, lines 20-28.[10] This temporary exception to the limits on mass communications was further expanded a short time later, on March 25, 2020, to allow certain mass communications during a restricted period to direct citizens to public and private

---

[8] See
https://www.electionreturns.pa.gov/General/SummaryResults?ElectionID=83&ElectionType=G&IsActive=0, last accessed on 12.7.2023.

[9] Amended Compl. (EFC No. 19 ¶ 29).

[10]
https://www.legis.state.pa.us/cfdocs/billInfo/billInfo.cfm?sYear=2019&sInd=0&body=h&type=r&bn=834, last accessed on. 12.7.2023

resources and services available to mitigate the COVID disaster emergency, as

follows:

> RESOLVED, That mass communication, excluding newsletters and
> similar mailings of more than 50 pieces a day in which the content of
> the matter is substantially identical, shall be permitted during a
> restricted period if the mass communication is limited to information
> directing constituents to public and private resources and services
> available to mitigate the impact of the state of disaster emergency
> declared March 6, 2020; ...

H.R. 2, P.N. 3502, p. 1, lines 11-18.[11]

As explained above, four of the calls at issue in this dispute were not made

during a restricted period.  The call on April 17, 2020, while it occurred during a

restricted period, fell within the specific exception to the limits on mass

communications adopted as part of H.R. 2.  See Transcript of April 17, 2020 call,

attached as Exhibit A (discussing assistance for issues related to COVID-19).

The role of providing information to the public has become integral to

legislative service in Pennsylvania.  The exceptions adopted to respond to COVID

only served to highlight the importance of that informational function.

Representative Bradford's calls were calls made by a state government caller

in the conduct of official business during times authorized by House Rules.

---

11

https://www.legis.state.pa.us/cfdocs/billInfo/billInfo.cfm?sYear=2019&sInd=0&body=h&type=r&bn=2, last accessed on 12.7.2023

## IV.   The Pennsylvania Senate's various Rules also permit legislatively-sponsored "mass" communications.

Like their counterparts in the House, the Pennsylvania Senate also begins each legislative term by adopting various Rules for the operation of the Senate, both legislatively and administratively. Collectively, they are comprised of the Ethical Conduct Rules of the Senate (S.R. 1, P.N. 1 of 2019),[12] the Financial Operating Rules of the Senate (S.R. 2, P.N. 2 of 2019),[13] and the Rules of the Senate of Pennsylvania (S.R. 3, P.N. 3 of 2019).[14]

The Ethical Conduct Rules can generally be categorized as prohibiting the use by Members and staff of the official resources of the Senate for anything other than "official action." <u>See</u> S.R. 1, P.N. 1, pgs. 5-9. The Financial Operating Rules, among other things, outline generally the kinds of expenses which can be directly paid and/or reimbursed by the Senate. For instance, Rule 3 of the Financial

---

[12] https://www.legis.state.pa.us/CFDOCS/Legis/PN/Public/btCheck.cfm?txtType=HTM&sessYr=2019&sessInd=0&billBody=S&billTyp=R&billNbr=0001&pn=0001, last accessed 12.7.2023

[13] https://www.legis.state.pa.us/CFDOCS/Legis/PN/Public/btCheck.cfm?txtType=HTM&sessYr=2019&sessInd=0&billBody=S&billTyp=R&billNbr=0002&pn=0002, last accessed 12.7.2023

[14] https://www.legis.state.pa.us/CFDOCS/Legis/PN/Public/btCheck.cfm?txtType=HTM&sessYr=2019&sessInd=0&billBody=S&billTyp=R&billNbr=0003&pn=0003, last accessed 12.7.2023

Operating Rules permits the payment of "ordinary and necessary expenses for meals, lodging and incidental items" when the Senator is "engaged in the performance of legislative duties." S.R. 2, P.N. 2, p. 8, lines 16-22. Rule 6(a) authorizes Senate offices within the Capitol to incur expenses for utility services, insurance, printing services, telephone and data services, and postage and communications, among other things. Of course, in order to obtain payment for these expenses, vouchers must be submitted which appropriately document the expenses and "legislative purpose for each expenditure." S.R. 2, P.N. 2, p. 15, lines 20-24. As such, any expense incurred by a Member's office must have a legislative purpose in accordance with both the Ethical Conduct Rules and Financial Operating Rules in order to be paid or reimbursed by the Senate, or when using Senate resources.

Most importantly to this case, Rule 6(a)(10) of the Senate's Financial Operating Rules permits additional expenses other than those specified in those Rules to be paid if they are provided for in the "policies of the Senate Committee on Management Operations." The Senate's Committee on Management Operations ("COMO") was first established in 1981 in the Legislative Officers and Employees Law. See 46 P.S. 42.101a. The COMO is comprised of the President pro tempore, Majority Leader, Minority Leader, Majority Whip, Minority Whip, Majority Chairman and Minority Chairman of the Appropriations Committee, and Majority

and Minority Caucus Administrators. Id.  Rules, regulations, policies and procedures promulgated by COMO are published by the Chief Clerk of the Senate in a handbook format. 46 PS 42.102(b).

COMO Policy 2018:01 entitled "Electronic Communication Expenses" specifically addresses the permissibility of certain electronic communications by Senate offices. In particular, it permits the reimbursement of electronic communication expenses of Senate members relating to: "(1) Constituent Automated Messaging (Electronic email blasts to constituents, SMS texts); (2) tele-town halls; and (3) Auto-dialing regarding specific Senate events being held for the benefit of constituents." A copy of the Senate's COMO Policy 2018:01 is attached hereto as Exhibit C.  Payments for such communications are permitted from Member postage and communications accounts, caucus operations accounts, and legislative accountable expense accounts.

In short, as long as "electronic communication expenses" were being incurred for a legislative purpose, including expenses for auto-dialing and automated messaging, they were reimbursable by the Senate and consistent with the Senate's Ethical Conduct Rules. Where those conditions have been satisfied, a Senator's activities in this regard would be undertaken in the context of "official business" and not as a "person" within the meaning of section 227(b)(1) of the TCPA.

**CONCLUSION**

Representative Bradford, similar to his colleagues in the Pennsylvania

House of Representatives and the Pennsylvania Senate, is not a "person" under the

TCPA for the purposes of these calls and this litigation.  For the foregoing reasons,

the Republican and Democratic Caucuses of the Senate of Pennsylvania and the

Republican Caucus of the Pennsylvania House of Representatives respectfully

request that this Court grant Representative Bradford's Motion for Summary

Judgment.

Respectfully submitted,

/s/Rodney A. Corey                                /s/ Crystal Clark
Rodney A. Corey, Esq. (Pa. 69742)              Crystal Clark, Esq. (Pa. 91069)
James G. Mann, Esq. (Pa. 85810)                General Counsel
Office of Chief Counsel                         Senate Republican Caucus
House Republican Caucus                         Room 350, Main Capitol Bldg.
Pennsylvania House of Representatives           Harrisburg, Pa. 17120
Suite B6, Main Capitol                          (717) 787-8724
Harrisburg, Pa. 17120
(717)783-1510


/s/Ronald N. Jumper
Ronald N. Jumper, Esq. (Pa. 64346)
Shannon A. Sollenberger, Esq. (Pa. 308878)
Office of Chief Counsel
Senate Democratic Caucus
Room 535, Main Capitol Bldg.
Harrisburg, Pa. 17120
(717) 787-3736


Dated:  December 15, 2023