**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ANDREW R. PERRONG,

              Plaintiff,

     vs.

MATTHEW BRADFORD

          Defendant.

Case No. 2:23-cv-00510-JDW

**Plaintiff's Response in Opposition To Defendant's Motion for Summary Judgment**

## Table of Contents

I.      **Introduction** ................................................................................................. 1

II.     **Factual Background** ..................................................................................... 2

III.    **Summary Judgment Standard** ................................................................... 3

IV.     **Argument** ..................................................................................................... 4

    A.   The FCC's *Broadnet Order* is not binding on this Court and this Court should refuse to follow it because it conflicts with the express language of the TCPA, which extends to "persons" and "individuals" like Defendant. ............................................................... 4

        1.   The *Broadnet Order* is an interpretative rule. As such, this Court should not follow it when, as here, the statutory text is clear. ................................................................. 4

        2.   The *Broadnet Order* conflicts with the express text of the TCPA, which applies to all persons, like Defendant Bradford, regardless of their capacity. ............................................. 7

    B.   Even if this Court follows the *Broadnet Order*, summary judgment must still be denied because it is unclear, both as a legal and factual matter, whether the calls were made while Bradford was "acting on official government business." ........................................ 10

        1.   Neither the *Broadnet Order* nor Defendant provide the Court with a legal standard with which to evaluate whether the calls were made while Defendant was "acting on official government business," and analogous precedent supports the conclusion that Defendant was *not* "acting on official government business" when he placed the calls. ............................. 11

        2.   Without an applicable legal standard, whether or not the calls were made in furtherance of "official government business" is a disputed factual question. The Pennsylvania House Rules and conflicting testimony in this case further demonstrate that this fatual question is disputed. .............................................................................. 15

    C.   Representative Bradford is not entitled to qualified immunity because he violated a clearly established statutory right. ................................................................. 20

    D.   Amici's illusory parade of horribles will not occur if this Court denies summary judgment because elected officials still have other ways of legally communicating with their constituents. ................................................................................. 22

V.      **Conclusion** ................................................................................................. 23

## Table of Citations

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 3

*Attwood v. Clemons*, 818 F. App'x 863 (11th Cir. 2020) ............................................ 20

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ................................................. 21

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ............................ 5, 7

*DeSimone, Inc. v. Philadelphia Auth. for Indus. Dev.*, No. 00207 NOV.TERM 2001, 2003 WL 21390632 (Pa. Com. Pl. June 10, 2003) ...................................................... 14

*Dickey v. CBS*, 387 F.Supp. 1332 (E.D. Pa. 1975) ...................................................... 14

*El v. SEPTA*, 479 F.3d 232 (3d Cir. 2007) .............................................................. 3, 4

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941) ............................... 7

*Filarsky v. Delia*, 566 U.S. 377 (2012) ................................................................. 20

*Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094 (11th Cir. 2019). .............................. 5

*Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128 (D. Minn. 2017) .................... 8

*Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019). ...................................................... 5, 6, 7

*Hamilton v. Hennessey*, 783 A.2d 852 (Pa. Commw. Ct. 2001) ..................................... 14

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........................................................... 20

*Hoellen v. Annunzio*, 468 F.2d 522 (7th Cir. 1972) .............................................. 12, 13

*In re Union Pac. R.R. Emp't Practices Litig.*, 479 F.3d 936 (8th Cir. 2007) ............................. 7

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) .................................... 21

*Lewis v. Clarke*, 581 U.S. 155 (2017) ................................................................. 20

*Lunderstadt v. Colafella*, 885 F.2d 66 (3d Cir. 1989) ................................................. 14

*Lyngaas v. Ag*, 992 F.3d 412 (6th Cir. 2021) .......................................................... 9

*Marbury v. Madison*, 5 U.S. 137 (1803) .............................................................. 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................................ 4

*Monteiro v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006) ...................................................... 19

*Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005) ........ 9

*Noonan v. Kane*, 305 F. Supp. 3d 587 (E.D. Pa. 2018). .............................................................. 3

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019)............ 4, 5, 6

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) .................................................................. 10

*Perrong v. Bradford*, No. 2:23-CV-00510-JDW, 2023 WL 6119281 (E.D. Pa. Sept. 18, 2023) 7, 8

*Ryan v. Burlington Cnty, N.J.*, 889 F.2d 1286 (3d Cir. 1989) ..................................................... 15

*Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218 (6th Cir. 2015) ............. 9

*Schiaffo v. Helstoski*, 492 F.2d 413 (3d Cir. 1974) ................................................................ 13, 14

*United States v. Brewster*, 408 U.S. 501 (1972) ................................................. 12, 13, 14, 16, 17

**Statutes**

28 U.S.C. § 2342 ........................................................................................................................... 5

47 U.S.C. § 153 ............................................................................................................................. 7

47 U.S.C. § 227(b) ..................................................................................................................... 7, 8

47 U.S.C. § 301 ............................................................................................................................. 8

47 U.S.C. § 305 ............................................................................................................................. 8

Fed. R. Civ. P. 56(e) ..................................................................................................................... 4

U.S. Const. art. VI, cl. 2.............................................................................................................. 22

**Other Authorities**

Complaint, ECF No. 1 ................................................................................................................... 2

Consolidated Statement of Material Facts, ECF No. 44 ................................................................ 8

Defendant's Motion to Dismiss, ECF No. 8................................................................................... 2

*In re: Broadnet Teleservices LLC Declaratory Ruling – Order on Reconsideration*, 35 FCC Rcd. 15052 (2020) [hereinafter *Broadnet Order*] .......... 2, 4, 5, 6, 7, 9, 10, 11, 12, 13, 15, 16, 17, 18

*Individual*, Merriam-Webster ...................................................................................................... 9

Joint Exhibit B, Bradford Dep., ECF No 45-2.................................................................... 15, 18, 19

Joint Exhibit C, Caton Dep., ECF No 45-3....................................................................... 17, 18, 19

Joint Exhibit E, Second Set of Produced Documents, ECF No. 45-5 .......................................... 19

Joint Exhibit F, Pennsylvania House Rules, ECF No. 45-6.................................................... 16, 17

*Loper Bright Enterprises v. Raimondo* ............................................................................. 6

Order on Defendant's Motion to Dismiss, ECF No. 1 ................................................................ 2

# I.   INTRODUCTION

The evidence supporting Defendant Bradford's affirmative defense of immunity is anything but straightforward and fails both prongs of the summary judgment standard. First, Representative Bradford has not met his burden of demonstrating that he is entitled to judgment as a matter of law on his immunity defense because the plain text of the TCPA indicates that immunity does not apply in this case, which is brought against Bradford in his individual capacity for actions he took that violated the TCPA. Second, even if this Court were to entertain an immunity defense to the claims at issue here, the absence of a concrete standard for such a defense precludes this Court from entering judgment as a matter of law and demonstrates that there is a genuine issue of material fact for the jury to consider.

Relatedly, Representative Bradford is not entitled to qualified immunity for clearly unlawful actions he took in recording and placing pre-recorded robocalls, conduct which has been illegal since 1991. Moreover, the illusory parade of horribles *Amici* paint will not occur if this Court denies summary judgment because Representative Bradford and his peers in the House and Senate still have multiple ways to effectively communicate with constituents, including making prerecorded calls with constituents' prior express written consent, manually dialed live calls, calls constituents make to their representatives, newsletters, and social media.

Ultimately, Representative Bradford's motion must fail as a legal matter because, when viewing all evidence in the light most favorable to the Plaintiff, he has failed to demonstrate that his actions in recording and placing the calls at issue were entitled to any form of immunity sufficient to satisfy his burden of proving an affirmative defense at summary judgment. Furthermore, as the affirmative defense upon which Defendant seeks summary judgment is one on which he bears the burden of proof at trial, the Court should likewise hold that he has not met

his burden of demonstrating entitlement to this affirmative defense as a matter of law. For the foregoing reasons, summary judgment in Representative Bradford's favor is unwarranted.

## II.   FACTUAL BACKGROUND

On February 8, 2023, the Plaintiff filed his initial complaint in this matter. (ECF No. 1). Thereafter, Defendant, Representative Matthew Bradford ("Representative Bradford" or "Defendant"), filed a motion to dismiss Plaintiff's complaint. (ECF No. 8). This Court denied Defendant's motion, holding that, to the extent the Plaintiff sued Defendant in his individual capacity, that such claim "can proceed." (ECF No. 11). In denying Defendant's motion, the Court considered Defendant's affirmative defense that, under the FCC's *Broadnet Order*, he was not a "person" under the TCPA and thus exempt from its provisions. (*Id.*). However, on the limited factual record before it, the Court concluded it could not make a determination on the issue of whether Defendant was a "person" under the TCPA without the parties conducting discovery, including "how the calls or information session were financed," or "whether legislature requested information sessions on Pennie for constituents." (*Id.*).

Thereafter, Plaintiff conducted discovery centered on whether Defendant was a "person" under the TCPA and the explicit text of the *Broadnet Order*. As a legal matter, the Defendant was unable to provide any policy or other documents surrounding any standard for house members sending out robocalls, save for the Rules of the House of Representatives, which do not directly address the issue on which Defendant now seeks summary judgment. The discovery developed in this case produced no judicially-manageable legal standard under which this Court could make a finding that Defendant is entitled to judgment as a matter of law on the immunity defense. And the other discovery adduced in this case, including Defendant's motives for placing the calls and the fact that they were directed by Defendant, leave disputed factual questions.

2

### III.   SUMMARY JUDGMENT STANDARD

The standard for a motion for summary judgment is well established before this court. However, it must be recognized that Defendant is performing a summary judgment attempt premised on an affirmative defense, that is, a defense on which he will bear the burden of proof at trial. The defense of immunity is an affirmative defense for which the burden of proof is on the Defendant. *Noonan v. Kane*, 305 F. Supp. 3d 587, 596 (E.D. Pa. 2018). For a defendant to prevail on a summary judgment motion based on an affirmative defense, the defendant must adduce evidence supporting each element of its affirmative defense, and the evidence must be such to "support the findings of fact necessary to win" on such defense. *El v. SEPTA*, 479 F.3d 232, 237 (3d Cir. 2007). Put another way, "it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* at 238 (explaining that evidence presented at summary judgment on affirmative defense must be such that no reasonable juror would disbelieve it).

Moreover, the defendant seeking summary judgment on an affirmative defense also bears the burden of establishing the legal elements of the defense as the factual support for such elements are, by definition, "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that demonstrating facts which would lend a reasonable factfinder to reject elements of a claims, such as credibility questions, gaps in the evidence, and issues with the sufficiency of proof, all will defeat summary judgment). Of course, in addition to the heightened standard the defendant bears at summary judgment of establishing an affirmative defense, the Court must still evaluate all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the Plaintiff's favor. *Matsushita Elec. Indus. Co. v. Zenith*

3

*Radio Corp.*, 475 U.S. 574, 587 (1986). If, and only if, the Court is satisfied that the moving party has nevertheless met this burden, which itself is higher than it otherwise would be by virtue of being an affirmative defense, the nonmoving party must, by affidavit or other evidence, set forth facts showing that a genuine issue of material fact exists–that is, some chance that a reasonable jury would disbelieve the Defendant's proffered evidence in support of its defense. FED. R. CIV. P. 56(e); *SEPTA*, 479 F.3d at 238.

## IV.   ARGUMENT

A.   *The FCC's Broadnet Order is not binding on this Court and this Court should refuse to follow it because it conflicts with the express language of the TCPA, which extends to "persons" and "individuals" like Defendant.*

Representative Bradford's affirmative immunity defense on which he seeks summary judgment hinges on whether the FCC's Order on Reconsideration in its *Broadnet Teleservices Declaratory Ruling* applies to this case. *In re: Broadnet Teleservices LLC Declaratory Ruling – Order on Reconsideration*, 35 FCC Rcd. 15052 (2020) [hereinafter *Broadnet Order*]. As will be explained below, this Court must refuse to follow the FCC's guidance in the *Broadnet Order* because it is an interpretative rule that conflicts with the express language of the TCPA, which applies to all "persons," which includes "individuals." Because Representative Bradford has not met his burden at summary judgment of demonstrating that he is entitled to judgment as a matter of law on this issue, this Court must deny his motion for this reason alone.

  1.   The Broadnet Order is an interpretative rule. As such, this Court should not follow it when, as here, the statutory text is clear.

In 2019, the Supreme Court outlined the legal standard district courts must apply when they are asked to interpret an FCC order, as Defendant's motion asks this Court to do. *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2054–55 (2019).

Specifically, the Supreme Court clarified the interplay between its decision in *Chevron, U.S.A.,*
*Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and the Hobbs Act, 28 U.S.C. § 2342,
which vests exclusive original jurisdiction in the Circuit Courts of Appeal for challenges to the
FCC's orders. Specifically, the Supreme Court held that if the challenged order is the equivalent
of a "legislative rule," which is "issued by an agency pursuant to statutory authority" and has the
"force and effect of law," the district court must decline to entertain a challenge to the order
absent special circumstances because the Hobbs Act applies. *PDR Network*, 139 S. Ct. at 2055.
If, however, the order is the equivalent of an "interpretative rule," which merely "advis[es] the
public of the agency's construction of the statutes and rules which it administers," it lacks the
"force and effect of law," and a district court may decline to follow the agency's interpretation,
particularly when the agency's interpretation is at odds with the plain statutory text. *Id.*

As a starting point for this Court's analysis, this Court must first determine whether the
*Broadnet Order* is a legislative or an interpretative rule. As explained above, if this Court finds
that the *Broadnet Order* is a "legislative rule," it (at least for the time being) has the "force and
effect of law," and the Hobbs Act applies. *Guedes v. ATF*, 920 F.3d 1, 17 (D.C. Cir. 2019). If,
however, it is an "interpretative rule," this court may not be obliged to follow it. *Id.* "The Hobbs
Act, correctly construed, does not require district courts adjudicating cases within their ordinary
jurisdiction to treat agency orders that interpret federal statutes as binding precedent." *Gorss*
*Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019). In determining whether
a rule is "interpretative" or "legislative," the Court of Appeals for the D.C. Circuit has outlined
three factors to consider in determining whether an agency "intended to speak with the force of
law." *Guedes*, 920 F.3d at 18. Central to this analysis is the "language actually used by the
agency," together with "whether the agency has published the rule in the Code of Federal

Regulations," and "whether the agency has explicitly invoked its general legislative authority." *Id.* (citing cases).

Although the Supreme Court seems poised to overturn its decision in *Chevron* this term in light of *Loper Bright Enterprises v. Raimondo*, the Supreme Court's reasoning in *PDR Network* will likely be largely unaffected by whatever the Supreme Court does in *Loper Bright* because the Supreme Court made clear that when, as here, the challenged order is an interpretative rule, this Court is not called upon to conduct a *Chevron* analysis. If the Supreme Court does overturn *Chevron* in *Loper Bright*, that decision would likely render all agency rulemaking, including the *Broadnet Order*, mere interpretative rules in any event, rendering the analysis of whether the *Broadnet Order* is an interpretative rule irrelevant.

Regardless, under existing jurisprudence, the *Broadnet Order* is clearly an interpretative rule, not a legislative one. Starting with the first element the Supreme Court outlined in *Guedes*, a review of the Order's plain text indicates that it is an interpretative rule. In its first paragraph, the Commission stated that it is taking "further steps to target unwanted robocalls by reconsidering our previous *interpretations* of the [TCPA]." *Broadnet Order* at ¶ 1 (emphasis added). The Commission went on to state that it was issuing a rule surrounding the TCPA's "*interpretive presumption* that the word "person" does not include the federal government . . . and that it "interprete[d]" the TCPA to hold that "state governments" were "entitled to the same presumption." *Id.* at ¶ 2–3 (emphasis added). It is clear from the plain text of the *Broadnet Order*, therefore, that it is an interpretative, not a legislative, rule.

Moreover, the FCC did not publish the *Broadnet Order* in the Code of Federal Regulations or undertake any steps to expressly codify its restricted definition of a "person"

under the TCPA, thus further supporting the conclusion that it is an interpretative rule, not a legislative one. Finally, no part of the *Broadnet Order* contains any language indicating that the Commission was invoking its general legislative authority, such as by "invoking the *Chevron* framework and then elaborating at length as to how *Chevron* applies to the Rule." *Guedes*, 920 F.3d at 18. Indeed, any reference to *Chevron* is completely absent in the *Broadnet Order*. For the foregoing reasons, it is clear that the *Broadnet Order* is an interpretative rule.

     2.   <u>The Broadnet Order conflicts with the express text of the TCPA, which applies to all persons, like Defendant Bradford, regardless of their capacity.</u>

The TCPA makes it unlawful for any "person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice" to certain protected telephone lines. 47 U.S.C. § 227(b)(1), (b)(1)(A). Helpfully, Congress already defined "person" in the Communications Act to "includ[e]" "an individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39). Notably, the Act's definition of "person" prefaces its list with the word "includes," meaning that the application of the Act's provisions is *larger* than that articulated by Congress. The use of the term "includes" suggests Congress "was being illustrative rather than exclusive with the list following the phrase." *In re Union Pac. R.R. Emp't Practices Litig.*, 479 F.3d 936, 946 (8th Cir. 2007); *accord Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term "including" is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.").

As this Court has already counseled, "The best way to know what Congress intended when it passed a statute is to look at the text of the law." *Perrong v. Bradford*, No. 2:23-CV-00510-JDW, 2023 WL 6119281, at *1 (E.D. Pa. Sept. 18, 2023). The text of the TCPA, and the

Communications Act of which it is a part, is clear, as this court acknowledged. *Id.* The TCPA applies to and makes it unlawful for any "person," which includes an "individual" to make *any* call using prerecorded voices to protected telephone lines. The statutory text itself, therefore, rebuts the Defendant's argument and shows that the Defendant is not entitled to judgment as a matter of law on this issue. Congress created two and only two exceptions to the TCPA's robocall provisions, neither of which apply here: calls made for emergency purposes, and calls made with the prior express consent of the called party. 47 U.S.C. § 227(b)(1).

The TCPA says nothing of the "capacity" of a government caller making the calls, but rather imposes liability equally on all "individuals," like Defendant. Especially because Congress used the term "includes" in listing what constitutes a "person" under the TCPA, Congress expressed an intent to *expand* the applicability of the Act's provisions to encompass entities beyond those it explicitly enumerated, for example, on labor unions. *Cf. Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1142 (D. Minn. 2017). Congress could have limited the extent to which individuals were subject to the TCPA, such as by requiring a specific purpose for a violative call, but it did not; on the contrary, it expanded it. This Court need not even go that far, however, because the statutory text is clear in that the TCPA applies to individuals and to state governments and employees. For example, the Communications Act contains a specific exemption for "government owned" radio stations "operated by the United States." 47 U.S.C. § 305. As in the TCPA, however, despite only applying to "persons," state governments are nevertheless held to be subject to the licensing requirements of 47 U.S.C. § 301. *Id.*

Despite stating that this fact is disputed, and therefore rendering summary judgment inappropriate, (Consolidated Statement of Material Facts, ECF No. 44 at p. 59 ¶ 1), the Defendant is clearly an "individual." Defendant cannot deny his very existence as "a particular

being or thing as distinguished from a class, species, or collection: such as a single human being." *See Individual*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/individual [https://archive.is/ZpNU0]. Because he is an individual, Defendant Bradford is unquestionably a "person" under the TCPA and therefore subject to its provisions. He cannot claim immunity from a federal statute under which he is covered.

Because the Court's construction of the statutory text "follows from the unambiguous terms of the statute," this Court should not consider the *Broadnet Order*, an interpretative rule that clarifies otherwise unambiguous statutory text. *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005). Circuit Courts of Appeal have had no trouble doing so in nearly identical cases to the one here. Recently, for example, the FCC issued an interpretative order similar to the *Broadnet Order* clarifying that the TCPA's junk fax protections applied only to physical fax machines and did not apply to so-called "eFax" services.

In affirming the district court's denial of summary judgment and granting of class certification, the Sixth Circuit was unpersuaded by and declined to follow the FCC's order because it conflicted with the "plain language of the TCPA." *Lyngaas v. Ag*, 992 F.3d 412, 426 (6th Cir. 2021). Specifically, it held that because the plain text of the statute defined a "telephone facsimile machine" as "equipment" that has the "capacity . . . to transcribe text or images . . . from or onto paper," the FCC's order, and the defendants' argument, was rebutted by "the statutory text alone." *Id.* Similarly, in *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, the Sixth Circuit concluded that it would not defer to the FCC's interpretation of a statute when its construction follows from the statute's unambiguous terms. 788 F.3d 218, 223 (6th Cir. 2015) (citing *Brand X*, *supra*).

So too here. "[T]he judicial power, as originally understood, requires a court to exercise its independent judgment in interpreting and expounding upon the laws." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 119 (2015) (Thomas, J., concurring). The express language of the TCPA applies to "persons," which includes "individuals." Bradford is a person. There is nothing in this case more evident than that fact. Defendant has not met his burden at summary judgment of demonstrating that he is not a "person" and therefore falls outside the express scope of the TCPA's provisions. He provides no reason why this Court should follow the *Broadnet Order*, particularly when, as a preliminary matter, its interpretation runs contrary to the plain statutory text. Indeed, as Commissioner Rosenworsel stated in her dissent to the *Broadnet Order*, "But we also determine that state authorities are beyond the reach of this law, meaning robocall restrictions do not apply to the calls they make. It's this last piece that I think is a mistake. Because where the law is at all ambiguous, and even if it may be a close call, I think this agency should side with consumers and their cry to cut down the number of robocalls they receive." *Broadnet Order* at 15072. Because the *Broadnet Order* advances a statutory interpretation that is at odds with the express text, and because the TCPA is a consumer-protection statute, this Court should instead apply the statute as written and hold that Defendant is a "person."

B.      *Even if this Court follows the Broadnet Order, summary judgment must still be denied because it is unclear, both as a legal and factual matter, whether the calls were made while Bradford was "acting on official government business."*

To the extent that this Court follows the *Broadnet Order*, this Court must nevertheless deny Defendant's motion because the Defendant has not demonstrated that he is immune for the conduct at issue because he has not demonstrated that the calls at issue were made while he was "acting on official government business." First, neither the Defendant nor the *Broadnet Order* advance a judicially-manageable legal standard with which to evaluate whether a caller is "acting

on official government business" and therefore whether or not the *Broadnet Order* applies to the calls in this case. In the absence of a legal standard to apply, it is inappropriate for the Court to grant judgment to Defendant as a matter of law on this basis. And analogous precedent supports Plaintiff's contention that the calls were not made while Bradford was acting in this manner. Furthermore, even if this Court were to find a legal standard to apply, the issue of whether or not the calls were made as part of Defendant Bradford "acting on official government business" is a disputed factual question, rendering summary judgment inappropriate.

1.  <u>Neither the *Broadnet Order* nor Defendant provide the Court with a legal standard with which to evaluate whether the calls were made while Defendant was "acting on official government business," and analogous precedent supports the conclusion that Defendant was *not* "acting on official government business" when he placed the calls.</u>

Unsatisfyingly, neither the *Broadnet Order* nor Defendant's brief evaluate or articulate the standard this Court should apply to determine whether the calls at issue here were made while Defendant was "acting on official government business." The only statement in the *Broadnet Order* that comes close to a standard is the Commission's statement that its "clarification is limited to calls made by state government callers in the conduct of official business and does not exempt *other types of calls* made by *state officials*, such as those *related* to campaigns for re-election." *Broadnet Order* at ¶ 26 (emphasis added). This statement is not particularly helpful because the calls here might fall within the "other types of calls" made by "state officials" the FCC articulates, and the order itself does not articulate *where* courts should draw the line as to what constitutes these "other types of calls." The calls here were clearly not explicitly related to a re-election campaign, but they also were not so clearly made in the "conduct of official business;" at best, they fell in the grey area between these two possibilities. Accordingly, the Defendant is unable to demonstrate that he is entitled to "judgment as a matter

11

of law" on this issue because the Defendant does not even outline *what law* the Court should apply, rendering the issue of whether the calls were made for "official business" a jury question.

But even applying analogous legal standards demonstrates that the calls were not "official," and by extension, demonstrate that the calls complained of were placed by Representative Bradford in his individual capacity. To the extent that this Court uses the *Broadnet Order* in determining summary judgment and evaluating whether or not the calls were made while Representative Bradford was "acting on official government business," this Court should look to other cases in the political and legislative branch context evaluating the term "official (government) business" and similar such terms. The preeminent case on the matter is *United States v. Brewster*, 408 U.S. 501 (1972).

Of relevance here, in *Brewster*, the Supreme Court outlined what constituted actions "said or done . . . in the performance of official duties." *Id.* at 512. There, the Supreme Court held that such activities as "preparing so-called "news letters" to constituents, news releases, and speeches delivered outside the Congress," though "entirely legitimate activities," are "political in nature rather than legislative." *Id.* In holding that the Speech or Debate Clause did not immunize Senator Brewster from prosecution on federal bribery charges, the Supreme Court distinguished between official conduct which is clearly part of the legislative process–such as voting, speaking on the floor or conducting a legislative hearing–and unofficial conduct which is incidentally related to the legislative process. *Hoellen v. Annunzio*, 468 F.2d 522, 527 n.8 (7th Cir. 1972).

Based on the reasoning in *Brewster*, this Court should hold as an initial matter that even if the calls were entirely legitimate and permitted by the rules of the House of Representatives, they nevertheless were not made by Representative Bradford while acting on "official government business" because they clearly did not fall within the ambit of "legislative activities"

entitled to legislative immunity and were thus placed in Bradford's individual capacity. Indeed, as the Seventh Circuit held in *Hoellen*, "sending out documents and questionnaires to constituents and others, while entirely legitimate activities related to the legislative process, are not purely legislative activities." *Id.* (cleaned up). The Court in *Hoellen* held that no doctrine of legislative immunity precluded inquiry into the legal use of the franking privilege and further held that if such conduct was not immunized from criminal prosecution, it likewise was not immunized against civil liability or injunctive relief. *Id.*

Defendant may argue that *Brewster* addressed only the applicability of the Speech and Debate Clause to actions taken outside the floor of Congress. That may be so, but the Third Circuit has extended *Brewster's* holding in analyzing communications nearly analogous to those here. Merely because some actions are *related* to official legislative business does not render them "official." For example, before Congress amended the franking statute to expressly permit the mailing of constituent newsletters, the Third Circuit in *Schiaffo v. Helstoski* stated:

> Brewster has placed many activities 'related' to the performance of a congressman's duties outside the protection of the Speech or Debate Clause. . . . We believe that the thrust of Brewster requires us to regard Helstoski's use of the frank to mail the materials in this case as outside the protection of the Speech or Debate Clause. Mailings of items such as newsletters may well be necessary if a congressman is conscientiously to perform his legislative tasks. But Brewster makes it clear that the immunity of the Speech or Debate Clause does not extend to a number of legitimate legislative activities, and we would include among such activities the mailing of materials under the frank.

> 492 F.2d 413, 418 (3d Cir. 1974) (cleaned up).

Pennsylvania's trial and appellate courts have also weighed in on what constitute the "official duties" of a member of the General Assembly. Unlike some federal laws like the Congressional franking statute, which, for example, provides "express guidelines as to what constitutes 'official business,'" Pennsylvania law, like the *Broadnet Order*, is also silent.

13

*Hamilton v. Hennessey*, 783 A.2d 852, 858 (Pa. Commw. Ct. 2001), aff'd, 800 A.2d 927 (2002). In *Hamilton*, the Commonwealth Court applied the reasoning in *Schiaffo* and *Brewster* and refused to extend legislative immunity to newsletters issued by a state representative because the preparation of the particular newsletter "although related to official business, was not a protected activity." *Id.* at 855 (cleaned up). And in *DeSimone, Inc. v. Philadelphia Auth. for Indus. Dev.*, the Philadelphia Court of Common Pleas noted that "it is not as clear to what extent the scope of legislative immunity extends to activities which take place outside the legislative chamber" and posited that it would not be willing to extend legislative immunity to actions taken while "performing administrative functions." No. 00207 NOV.TERM 2001, 2003 WL 21390632, at *5 (Pa. Com. Pl. June 10, 2003). There is no question that the communications at issue here were at most administrative, not legislative, and therefore were not "official communications" for which Representative Bradford can enjoy legislative immunity.

Similarly, in *Lunderstadt v. Colafella*, 885 F.2d 66 (3d Cir. 1989), the Third Circuit concluded that legislative immunity did not extend to the allegedly defamatory comments by counsel for a legislative committee at a news conference convened to respond to a political adversary. And in *Dickey v. CBS*, 387 F.Supp. 1332 (E.D. Pa. 1975), this Court refused to grant immunity to a Congressman who was called to testify as a nonparty witness concerning a speech he gave because that speech was not within the ambit of official legislative activity. Finally, in *Ryan v. Burlington Cnty, N.J.*, the Third Circuit distinguished between "administrative functions" and "legislative functions," and held that "[l]egislative acts are those which involve policy-making decision of a general scope or, to put it another way, legislation involves line-drawing. Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration." 889 F.2d 1286, 1290–91 (3d

Cir. 1989). Applying the aforementioned cases to the calls at issue here indicates that the calls were "administrative" and therefore were not made in furtherance of official legislative business.

The calls at issue here did not, for example, inform constituents about laws which Representative Bradford passed or otherwise communicate about legislative actions. Rather, on face, they sought to advertise, a single called party at a time, the availability of non-legislative, administrative constituent services, like community activities, events, and the like, as Defendant himself admitted. (Joint Exhibit B, Bradford Dep., ECF No 45-2, 19:10-15). Furthermore, besides being administrative, those advertised constituent services had undertones of a political and commercial character, therefore further rendering them outside the ambit of legislative activity. Based on these cases, this Court should conclude that the calls were not made while "conducting official business" because, at best, they were unofficial administrative or political communications, not official legislative ones.

2. Without an applicable legal standard, whether or not the calls were made in furtherance of "official government business" is a disputed factual question. The Pennsylvania House Rules and conflicting testimony in this case further demonstrate that this factual question is disputed.

A review of the facts of this case further demonstrates that summary judgment is inappropriate here because there exists a genuine dispute as to whether the calls were made in furtherance of official legislative activity. A jury should decide this fact. Unless the Court applies a legal standard akin to those articulated above, where the Defendant's communications would clearly not be "official" communications subject to the *Broadnet Order*, this Court is left to impermissibly guess and weigh the evidence as to whether or not the calls are exempt from the TCPA under the ambiguous language of the *Broadnet Order* itself. That demonstrates that the application of the facts and circumstances in this case to the factual question of whether the calls

were immune under a vague standard like the "official government business" standard articulated in the *Broadnet Order* is one properly reserved for the jury to determine. In essence, the Defendant asks this court to weigh the evidence in support of its affirmative defense without even providing a standard through which it expects this Court to evaluate it. And without a judicially-manageable standard to evaluate whether the calls were "official," Defendants force this Court to guess at whether Defendant Bradford is entitled to immunity at all.

As the *Broadnet Order* makes clear, its classification applies only to calls "made by state government callers in the conduct of official business" and does not exempt "other types of calls made by state officials." Although political calls advertising re-election campaigns are clearly not exempt, the *Broadnet Order* does not delineate when other calls cease to be made in "conduct of official business." As explained above, the FCC's delineation between exempt "official calls" and non-exempt "other types of calls" has overtones of *Brewster* and the above-cited jurisprudence in it. Under those cases, this Court should hold that the calls at issue here are exactly the same kinds of calls the FCC already determined were "other types of calls."

Defendant attempts to argue that the communications were made in the course of "official government business" by pointing to the Rules of the Pennsylvania House of Representatives, but these attempts only further serve to muddy the waters and demonstrate why a jury must determine the nature of the calls in the event this Court rejects Plaintiff's argument that the calls were not official because they were not immune "legislative activity." As the Supreme Court held in *Brewster*, *even if* the communications were "legitimate activities," that is one step removed from rendering them "official" activities. As a preliminary matter, "constituent mass communications" are *not* articulated as a permissible expense for a "legislative purpose" in the House Rules (Joint Exhibit F, Pennsylvania House Rules, ECF No. 45-6, ECF p. 3).  Indeed,

the *only* references to "mass communications," which include "robocalls on behalf of a Member" are found in the *ethical* section of the House Rules, which include restrictions against making such communications during certain election-related time periods. (*Id.*, ECF p. 13). If anything, the structure of the rules demonstrate that the drafters were concerned about the impropriety of such robocalls and their inherently political, non-legislative nature during election periods, supporting the conclusion that it did not consider such calls to be "official government business."

Furthermore, the application of the House Rules to this case is inappropriate because the rules here don't provide *any* standard for what constitutes an "official" "robocall" communication. This Court, therefore, is unable to address the required interplay between the federal statute under which Plaintiff sues and any applicable state standards governing that conduct. Moreover, the *Broadnet Order* requires the Defendant to prove that he was calling on "official" legislative business in order to avail himself of its holding, but the House Rules do not permit a straightforward factual determination of what does and does not qualify as an "official" communication. (*Id.*). Indeed, Robert Caton, the Senior Manager for Communications and Messaging for the House Democratic Caucus, stated that a "legislative purpose" included a "public benefit," "things like senior fairs" and other communications to "inform constituents about events about services available in offices" (Joint Exhibit C, Caton Dep., ECF No 45-3, 27:11-13, 28:3-5). Such purposes may well be permissible under state law, particularly from a financial perspective. The calls at issue here may even have met those requirements and been vetted under a legal and ethics review. But just because the calls are ethical, legitimate communications under state rules does not render them "official communications" under federal law, as the *Broadnet Order* requires and *Brewster* makes clear. 408 U.S. 512 (holding that non-legislative actions, though not entitled to immunity, may nevertheless be legitimate).

The ambiguous and unclear nature of the House Rules, just like the *Broadnet Order*, cry out for a jury to determine whether the factual background and text of each of the five calls at issue support the application of immunity in this case. The depositions taken in this case demonstrate that there exists a genuine factual dispute as to whether the calls were even permissible under those very rules. To begin with, Representative Bradford was unable to state whether any of the specific calls at issue here underwent a legal or compliance review. (Bradford Dep. 13:13–16). If such calls were flagged for review, that would tend to demonstrate some issue as to whether they were permissible on their face. And Representative Bradford placed the calls himself; he was not directed to do so by house leadership or as a result of any state government initiative. In essence, the calls were Defendant's idea and Defendant's alone. (*Id.* 21:10–15).

Similarly, Representative Bradford and Mr. Caton expressed differing views on the permissibility of some of the calls that Plaintiff received, including whether such calls were made for legitimate legislative purposes as Pennsylvania rules required. If reasonable minds could differ at deposition as to the application of these rules, surely too would a reasonable jury. Specifically, speaking on the basis of his own experience and knowledge, Mr. Caton stated that the Census Call, which advertised a job opportunity with the Census, would not be permissible. (Caton Dep. 40:5). Representative Bradford, on the other hand, stated he felt the call was permissible because it was made to "connect our constituents to the availability of employment." (Bradford Dep. 11:9–10). Similarly, Mr. Caton stated that the COVID call would "require review" and ultimately concluded that such a call was "not permissible" in his opinion. (Caton Dep. 41:9, 43:5–6). Representative Bradford stated that the call was permissible because his constituents were under a "stay at home order" and that his "office would be closed." (Bradford Dep. 11:1–2). And, despite saying that the call regarding the Affordable Care Act was

"permissible," Mr. Caton also stated that another member was restricted from placing a call "congratulating Barack Obama on passing this legislation." (Caton Dep. 43:20, 30:1–5).

Simply put, there is a genuine factual dispute as to whether or not some of the calls were even permissible under the House Rules, let alone if they were "official communications." If the government isn't in agreement as to what its own standards are, surely a jury cannot be, either. Admittedly, some of the calls Plaintiff received are closer to the line of permissibility under these fuzzy standards than others, but a jury should weigh the evidence in support of the reasons for each of the five calls, including extrinsic evidence as to whether or not each one of the five calls was an "official communication" as *Broadnet* outlined. For example, the evidence adduced in discovery may support a jury's conclusion that the calls were made to receive "public accolades and public comments supporting [Bradford's] candidacy." (Bradford Dep. 14:22–24). Though Bradford characterized this allegation as one "that borderlines on the absurd" (*Id.* at 15:2–3), Bradford received at least two emails from constituents doing exactly that. (Joint Exhibit E, Second Set of Produced Documents, ECF No. 45-5, ECF p. 8, 10). Moreover, the zoo event that drew public support was also supported by commercial sponsors selling goods and services, thus further lending questions if they fell under either vague standard. (*Id.* at ECF p. 11–16). And, when, as here, the plaintiff has adduced evidence through which a reasonable jury could conclude that the defendant acted with an ulterior motive, summary judgment is also inappropriate. *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) (affirming district court's denial of summary judgment on qualified immunity grounds in Section 1983 claim when plaintiff presented evidence showing disputed evidence of required improper intent).

Ultimately, because the Court lacks a judicially-manageable concrete standard to evaluate the permissibility of the calls Plaintiff received, and any applicable immunities or other

exemptions, the question of immunity here is a fact-intensive question that requires a jury to weigh and evaluate. Summary judgment is therefore inappropriate.

C. *Representative Bradford is not entitled to qualified immunity because he violated a clearly established statutory right.*

State officials like Representative Bradford may be subject to suit in their individual capacity for torts they commit while acting under "color of state law." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). In *Lewis*, the Supreme Court held that sovereign immunity did not shield a tribal casino driver from a negligence suit against him in his individual capacity. Like *Lewis*, this suit is a personal capacity suit. Though he may have been acting as an "official" as he "carrie[d] out his state duties," the Plaintiff here sues Representative Bradford in his individual capacity for those actions. *See Attwood v. Clemons*, 818 F. App'x 863, 872 (11th Cir. 2020) (discussing that, in the Section 1983 context, "the mere fact that a state employee was acting under color of state law does not mean that a claim against that employee targets him in his official capacity."). In other words, this suit proceeds against Representative Bradford for his individual behavior of choosing to send robocalls, thus rendering him the true party in interest. *See id.* at 871–72.

Nevertheless, a state official sued in their individual capacity while acting under color of state law may enjoy qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 801 (1982). But qualified immunity "may be overcome . . . if the defendant knew or should have known that his conduct violated a right clearly established at the time of the episode in suit." *Filarsky v. Delia*, 566 U.S. 377, 394 (2012) (Ginsburg, J., concurring) (cleaned up). Since 1991, the TCPA has prohibited prerecorded calls.

There can be no doubt here that Representative Bradford here violated the Plaintiff's statutory right to be free from unwanted, annoying, and illegal robocalls placed to his telephone number. It is and has been common knowledge since 1991 that prerecorded robocalls are illegal absent two exceptions: an emergency purpose, or prior express written consent. Indeed, the Fourth Circuit confirmed this truth, holding that the TCPA "stands out as a model of clarity." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019). And, in holding a governmental contractor liable for prerecorded calls it placed for the United States Navy in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), the Supreme Court addressed the qualified immunity question head on. It noted that the "TCPA's requirements . . . [did not fail] to qualify as clearly established" and that "the current record reveals no basis for arguing that Gomez's right to remain message-free was in doubt." *Id.* at 167–68.

Thus, Representative Bradford's contention that the TCPA does not prohibit the calls at issue here with a "high degree of specificity" is demonstrably false and must fail. The TCPA unquestionably prohibits the conduct at issue here, as the Supreme Court has held. This case may be different, if, for instance, there was some remaining question as to whether the calls met ambiguous statutory requirements. But that's not what happened here. The TCPA prohibits placing prerecorded calls to certain telephone numbers absent an emergency purpose or prior express written consent. The prerecorded calls here were placed to Plaintiff's protected telephone number absent emergency purposes and absent prior express written consent. Because the calls violated Plaintiff's clearly established statutory rights under the TCPA, qualified immunity does not apply.

D. *Amici's illusory parade of horribles will not occur if this Court denies summary judgment because elected officials still have other ways of legally communicating with their constituents.*

"It is emphatically the province and duty of the judicial department to say what the law is," not what it should be. *Marbury v. Madison*, 5 U.S. 137, 177 (1803). The TCPA makes it unlawful to place *any* call, except for emergency purposes or with prior express written consent, to *any* protected telephone number using a prerecorded voice. 47 U.S.C. § 227(b)(1), (b)(1)(A). And, no matter what state law permits regarding prerecorded robocalls, including whether they can be reimbursed using state funds, the federal TCPA controls under the Constitution's Supremacy Clause. U.S. Const. art. VI, cl. 2. And, as described above, the TCPA makes it unlawful for any "person," including a state representative, to make prerecorded robocalls. The Plaintiff realizes that denial of summary judgment in this case will necessitate changes within the House and Senate to ensure compliance with the TCPA. But a narrow holding exposing a state representative to potential individual liability for 5 prerecorded robocalls will leave open ample alternative means of communications, and will not set a precedent for other cases, as this Court's decision on summary judgment may well come down to the unique factual dispute at issue here.

For all *Amici* write about the necessity of communicating with constituents, they neglect some of the most obvious and important alternatives for communicating with constituents in a manner that is compliant with the TCPA and, most importantly, respects their individual privacy rights. As a preliminary matter, the denial of summary judgment would not prevent Representative Bradford or other elected officials from making prerecorded robocalls to individuals who provide their prior express written consent for them to do so. In respecting the opt-in approach required by the TCPA, elected officials would ensure that only those individuals who *wanted* calls would receive them, thus more effectively communicating with their

constituents and respecting the privacy interest of those persons, like Plaintiff, who object to such communications, and respecting Congress' stated intent.

Similarly, the denial of summary judgment will still permit elected representatives to communicate with their constituents using manually-dialed calls which do not constitute "telemarketing." It would also not prohibit elected representatives from answering phone calls from constituents or calling them back in response to inquiries made to their offices. Similarly, representatives may still communicate with their older constituents via postal mail newsletters and the like, and keep up to date with younger constituents using digital communications, including email lists and social media like X and TikTok.

In sum, the Plaintiff wants his telephonic privacy respected. He objects to and does not want to receive irksome, unsolicited, unwelcome, and particularly harmful robocalls, especially those from state politicians who do not even represent him. Like every other American, elected officials must abide by federal law, including the TCPA, when communicating with their constituents. It is trivial for these officials to ask for recipients' consent before blasting them with robocalls. These officials have a number of ways to legally communicate with their constituents and other interested parties without resorting to illegal robocalls. Congress prescribed a strong medicine for a strong disease. If politicians like Representative Bradford take issue with that, their remedy lies in Congress, not the Courts. If they nevertheless ignore the limited restriction on sending robocalls and thereby violate the TCPA, they do so at their own risk and peril.

## V.   CONCLUSION

This Court must DENY Defendant's motion for summary judgment because Defendants have not demonstrated their entitlement to judgment as a matter of law and also because there exist material facts in dispute.

23

Dated: **January 15, 2023**

_____/s/_____
Andrew R. Perrong, Esq.
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

## CERTIFICATE OF SERVICE

Plaintiff certifies that on January 15, 2023, he filed the foregoing on the Court's CM/ECF

system, which will send electronic notification to all counsel of record.

Dated: **January 15, 2023**

_____/s/_____
Andrew R. Perrong, Esq.
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

24